Jeanne **HARR** and L. J. Harr, for and on behalf of themselves and all others similarly situated, Appellants,

v.

**PRUDENTIAL FEDERAL SAVINGS AND LOAN ASSOCIATION,** Appellee.

No. 76–1300.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 16, 1977.

Decided June 27, 1977.

Rehearing Denied July 22, 1977.

association was part of a conspiracy by the directors to benefit themselves and the officers; that the plan was unfair and itself deceptive; that the proxy material was deceptive; and that Rule 10b–5 of the Securities and Exchange Commission was violated. The complaint also alleged that regulations of the Federal Home Loan Bank Board were disregarded. The prayer was for injunctive relief or for damages in an unspecified amount.

The trial court on a motion by defendants entered an order dismissing the complaint for lack of subject matter jurisdiction. Plaintiffs have taken this appeal. See also the opinion in *Harr et al. v. Federal Home Loan Bank Board*, 557 F.2d 747 (10th Cir.) filed this date.

As above described, the plaintiffs-appellants were depositors in a federally chartered mutual savings and loan association created under 12 U.S.C. § 1464(b)(1). The association created a plan to convert from a mutual association into a stock association, but retaining its federal charter. The depositors as of a stated date would receive "free stock" in the new entity. The conversion was permitted under section 5(i) of the Home Owners' Loan Act of 1933 (12 U.S.C. §§ 1461 et seq.), and the National Housing Act (12 U.S.C. §§ 1701 et seq.). *See also* 1974 U.S.Code Cong. & Admin.News, pp. 6119, 6136.

This case concerns especially changes made in 1974 in the Housing Act and also in section 12 of the Exchange Act made by Public Law 93–495. These changes placed the responsibility for supervision of proxy solicitations used in conversions, such as the one here concerned, with the Federal Home Loan Bank Board. The Bank Board by this Act was directed to adopt regulations covering the subject similar to those of the Securities and Exchange Commission. This was done by the Bank Board. *See* 12 C.F.R. §§ 563b.1 et seq. These regulations as to proxy solicitation are almost identical to SEC Regulation 14A which contains a specific antifraud subsection. It must be assumed that the private remedies available

Parker M. Nielson, Salt Lake City, Utah (Howard S. Landa, and A. Reed Reynolds, Salt Lake City, Utah, with him on brief), for appellants.

Richard W. Giauque, of Berman & Giauque, Salt Lake City, Utah (Douglas J. Parry and Randall L. Dunn, Salt Lake City, Utah, with him on brief), for appellee.

Before SETH and BARRETT, Circuit Judges, and KERR, Senior District Judge *.

SETH, Circuit Judge.

The plaintiffs brought this action against the Prudential Federal Savings and Loan Association, asserting that they were depositors in the mutual association. The allegations were that a plan to convert to a stock

* Of the District of Wyoming, Sitting by Designation.

under SEC 14A as to fraud also exist under the counterpart Bank Regulations.

The appellants in their brief describe the issues essentially as being:

1. Whether the depositors in an association such as Prudential who assert that the conversion plan and proxy material "arbitrarily converted their pro-rata ownership . . . for the benefit of other unentitled persons, may seek redress under the federal securities laws."

2. Whether an appeal from the Bank Board's decision to allow a conversion is the exclusive remedy for an "aggrieved shareholder."

3. Whether the Bank Board can extinguish property interests without compensation.

The appellants also assert that: "The gravamen of the complaint was that the conversion plan and proxy materials were fraudulent securities transactions . . ."

The trial judge, as mentioned above, dismissed the complaint for lack of subject matter jurisdiction for the reason that the action was a challenge to the Bank Board's decision and the exclusive remedy was an appeal of its ruling, per 12 U.S.C. §§ 1730a(k) and 1725(j)(4). On this appeal, the appellants basically urge that the powers vested in the Bank Board as to plans for conversion and as to proxy solicitations do not alter this remedy under SEC Rule 10b–5. Appellants have filed a petition to review the Bank Board's decision on the conversion, apparently under 12 U.S.C. § 1725(j)(4). See case No. 76–1109 in this court, handled as a companion case.

The trial court in substance held that 12 U.S.C. § 1725(j)(4) (as amended in 1974, Public Law 93–495) as it refers to 12 U.S.C. § 1730a(k), creates an exclusive remedy for the cause here asserted by the plaintiffs—an exclusive remedy to review a determination by the Bank Board.

The appellants argue that the conversion plan was a wrongful taking of their interest as depositors in the mutual association; that it was for the interest and benefit of the officers and directors of the Association. They also urge that the proxy materials were inadequate and constituted a fraud. The attack is thus directed to the "plan" and the proxy solicitation. The Bank Board had approved the plan and had apparently examined the proxy material, but, of course, did not "approve" it formally. Conversions of this nature had been permitted by Congress in the initial legislation in 1948, and was again allowed, after a moratorium, by legislation referring particularly to this Association and to several others which had applications of long standing.

Section 402(j)(4) provides in part that: "Any aggrieved person may obtain a review of a final action of the Federal Home Loan Bank Board which approves . . . a plan of conversion . . . only by complying with the provisions of subsection (k) of section 1730a of this title . . . ." Thus section 402 provides clearly the procedure for review. Section 1730a(k) provides that the petition for review to the Court of Appeals ". . . shall be exclusive, to affirm, modify, terminate, or set aside, in whole or in part the order of the Corporation." (A subsection follows (1) stating that nothing contained in the section shall approve prior violations. The appellant argues that this is significant here, but we must disagree.)

Thus does this statutory provision for a remedy by review exclude the remedy sought by plaintiffs which they assert is a regular Rule 10b–5 claim? From the references to the basis for the claim which is described above and from the issues presented as described in plaintiffs' brief, we must hold that the cause of action, no matter how otherwise described, must in the first instance be a challenge to the approval by the Bank Board of the plan of conversion, and the consideration of the proxy materials. It is "The Plan" itself which is the real basis for the arguments advanced here by plaintiffs. The attempted reliance on Rule 10b–5 is at best a secondary or derivative position. It is based on the consequences or impact of the plan on plaintiffs. The regulations of the Bank

Board as to proxy solicitation clearly extend to the proxy materials and events here concerned (12 C.F.R. § 563b.5). 12 U.S.C. § 1730(*l*)(5) authorizes the Board to so prescribe the form, to regulate and to control proxy statements. The Bank Board, following a study of Prudential's proxy solicitation material, determined and advised Prudential that it was in accordance with the Board's conversion regulations and thus "authorized" its use. Thus the proxy solicitation by Prudential was controlled by the Bank Board pursuant to statute and its regulations during the process of conversion, and in any event at all times prior to registration of the stock on July 15, 1976.

The complaint is directed to matters which are part and parcel of the plan of conversion approved by the Board. The plan itself is complained of as being unfair and "arbitrarily" having converted plaintiffs' interest in the mutual association to a stock ownership also and for the benefit of others. This can be nothing more than an assertion that the plan is wrong and should not have gone into effect. It could only be operative upon the Bank Board's approval.

The Prudential Association and the Bank Board and the Plan cannot be separated as it is the sum which has the impact complained of. As the matter now stands, the approval of the Board must somehow be first set aside before the plaintiffs can proceed as they here argue. The asserted Rule 10b–5 claim is wholly a consequence of the Board's approval of the plan.

It does not make much difference whether this is called an exhaustion of administrative remedies, or whether it is viewed as what in reality is a challenge to the Bank Board's decision although cast in terms of Rule 10b–5. The consequences are the same, and we must affirm the trial court. The subject matter, the nature of plaintiffs' claim, and the arguments before this court demonstrate that the relief sought can only be afforded by a challenge to the Bank Board's action as the basic decision and authorization for the acts and consequences complained of. Anything else would be directed to derivative and secondary matters,

and would, for all practical purposes, be a collateral attack on the decision. The statutory provisions are directed to this end and we hold that the remedy created is exclusive under these circumstances.

The decisions of this court in *Bank of Commerce v. Board of Governors of Federal Reserve System,* 513 F.2d 164 (10th Cir.), and *Bank of Commerce v. Smith,* 513 F.2d 167 (10th Cir.), apply the same doctrine as to the consequences of the express provision by Congress of a remedy. As the Supreme Court in *Whitney National Bank* said, there is a ". . . specific statutory scheme for obtaining review." *See also First National Bank of St. Charles v. Board of Governors,* 509 F.2d 1004 (8th Cir.).

As we have stated above, the sole thrust of plaintiffs' argument is directed to what in reality was the agency decision. This attack cannot be changed in its substance by a Rule 10b–5 gloss in what is really a collateral proceeding directed to derivative matters or consequences. The fact that the complaint is directed to such derivative consequences, of course, indicates that it is a collateral attack.

The court in *Fort Worth National Corp. v. Federal Savings & Loan Ins. Corp.,* 469 F.2d 47 (5th Cir.), in a case arising under the National Housing Act and concerning the acquisition of an association by a one-bank holding company, considered this issue. There was final agency action in the Bank Board's order, and the court considered 12 U.S.C. § 1730a(k) in relation to the jurisdiction assumed by the district court. The appellate court said:

"When Congress has prescribed a particular method of review, that procedure is exclusive. (Citing *Whitney National Bank in Jefferson Parish v. Bank of New Orleans,* 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386, and other cases). By specifying that appeals under section 1730a(k) were to be filed in the Courts of Appeals, Congress expected to prevent conflicting rulings and duplicative proceedings that inevitably would result from permitting collateral attack of Corporation orders in the various district courts . . . ."

The exclusive remedy is thus as provided in 12 U.S.C. § 1730a(k), the trial court concluded. Thus we need not proceed further to consider the other matters sought to be raised on this appeal.

AFFIRMED.