**Wayne C. REMBOLD and Karen D. Rembold, Darrell Steele, and Lyle Schneider, Plaintiffs-Appellants,**

v.

**PACIFIC FIRST FEDERAL SAVINGS BANK, a federally chartered stock savings bank in the State of Washington, Price Waterhouse & Co., a partnership, and Kaplan Smith & Associates, Inc., a Washington, D.C. corporation, Defendants-Appellees.**

No. 85–3946.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 9, 1986.

Decided Sept. 3, 1986.

Justine Fischer, Daniel H. Rosenhouse, Stoll & Stoll, Portland, Or., for plaintiffs-appellants.

Charles Lee Eisen, Kirkpatrick & Lockhart, Roslind Cohen, Pamela T. Parrish, James H. Schropp, Fried, Frank, Harris, Shriver & Jacobson, Washington, D.C., for defendants-appellees.

Before ALARCON, REINHARDT, and THOMPSON, Circuit Judges.

ALARCON, Circuit Judge:

Appellants Wayne C. Rembold and Karen D. Rembold (hereinafter the Rembolds), appeal from the district court's order dismissing their complaint against Pacific First Federal Savings Bank (hereinafter Pacific First) for lack of subject matter jurisdiction. Because the Rembolds alleged violations of federal securities laws, state securities statutes, and common law fraud and negligence, the district court had subject matter jurisdiction over this matter.

We review the dismissal of a complaint for lack of subject matter jurisdiction as a pure question of law reviewable *de novo.*

*Hoohuli v. Ariyoshi,* 741 F.2d 1169, 1173 (9th Cir.1984); *Miller v. Oregon Liquor Control Commission,* 688 F.2d 1222, 1223 (9th Cir.1982).

We construe the allegations of the complaint in favor of the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

## I. PERTINENT PROCEDURAL AND FACTUAL BACKGROUND

Prior to 1983, Pacific First was a mutual savings bank owned by its depositors. In April, 1983, the board of directors submitted an application to the Federal Home Loan Bank Board (hereinafter the FHLBB) for conversion of Pacific First from a mutual to a stock form of organization. The FHLBB approved Pacific First's application for conversion on June 13, 1983.

On June 15, 1983, Pacific First offered its depositors preferential rights to purchase 5,800,000 shares of conversion stock in a Subscription Offering Circular. The Rembolds purchased 328,726 shares of stock in Pacific First on or about July 16, 1983. They allege that they relied upon representations contained in the Subscription Offering Circular in purchasing shares.

The FHLBB regulations governing conversions to stock ownership require the preparation of a Subscription Offering Circular. 12 C.F.R. § 563b.7. The offer to sell securities may not be made prior to approval of the application for conversion. *Id.* Copies of the preliminary and final offering circulars must be filed with the FHLBB. 12 C.F.R. § 563b.8(3). No representation may be made in the offering circular that "price information has been approved ... or that the shares of capital stock sold pursuant to the plan of conversion have been approved or disapproved by the Federal Home Loan Bank Board ... or that the Board ... has passed upon the accuracy or adequacy of any offering circular covering such shares." 12 C.F.R. § 563b.7(d). Pacific First filed the Sub-

scription Offering Circular as part of the application for conversion.

Price, Waterhouse and Company (hereinafter Price, Waterhouse) certified the financial statements in the circular. Kaplan, Smith and Associates, Inc. (hereinafter Kaplan, Smith) independently appraised the stock.

On February 5, 1985, the Rembolds filed this action against Pacific First, Price, Waterhouse, and Kaplan, Smith (hereinafter appellees) alleging that the Subscription Offering Circular contained fraudulent representations. The Rembolds alleged violations of the 1933 Securities Act, § 12(2), 15 U.S.C. § 77$l$ (2), and § 17(a), 15 U.S.C. § 77q(a), violations of the 1934 Securities Exchange Act § 10(b), 15 U.S.C. § 78j(b), violations of Oregon and Washington state securities laws, common law fraud, and negligence. In particular, they alleged that the Subscription Offering Circular contained misrepresentations which overstated the value of Pacific First's assets in real estate and in its loan portfolio. The Rembolds also alleged that the Subscription Offering Circular contained false projections of the future earnings of Pacific First, and that it failed to disclose information regarding management strategies which would result in short term losses, and information about the magnitude, timing, and effect of a second stock offering.

The defendants filed motions to dismiss on ten separate grounds including lack of subject matter jurisdiction, failure to state a claim for relief, and failure to plead with specificity as required by Fed.R.Civ.P. 9(b). In its written Order and Opinion, the district court, after reciting each of the discrete challenges to the complaint, held that "it need only address the issue of subject matter jurisdiction." The district court concluded that:

[P]laintiffs' challenge to the Subscription Offering Circular and to the issuing of subsequent offerings amounts to no more than a challenge to the conversion process as approved by the FHLBB. Congress has chosen to vest review of such action exclusively in the Court of Appeals and this court will not read this complaint to circumvent that exclusive review.

It is clear from the quoted language that the district court declined to consider the merits of any of the plaintiffs' claims because of its view that it lacked jurisdiction to consider a challenge to an allegedly fraudulent and negligent stock offering made after approval of a bank conversion by the FHLBB.

## II. DISCUSSION

We must decide whether in enacting the National Housing Act, 12 U.S.C. §§ 1725(j)(2) and 1730a(k), Congress intended to deprive a district court of the jurisdiction to hear common law and federal and state securities law violations in a stock offering issued after the conversion of a mutual bank to a stock form of organization.

The National Housing Act of 1934, 12 U.S.C. § 1725(j), allows a mutually owned and federally regulated savings institution to convert to a stock form of ownership. Section 1725(j) provides as follows:

(1) Except as provided in section 1464 of this title, no insured institution may convert from the mutual to stock form except in accordance with the rules and regulations of the Corporation.

(2) Any aggrieved person may obtain review of a final action of the Federal Home Loan Bank Board or the Corporation which approves, with or without conditions, or disapproves a plan of conversion pursuant to this subsection only by complying with the provisions of subsection (k) of section 1730a of this title within the time limit and in the manner therein prescribed....

Section 1730a(k) of the National Housing Act authorizes judicial review of an order approving or disapproving a conversion plan. Section 1730a(k) provides in pertinent part as follows:

Any party aggrieved by an order of the Corporation under this section may obtain a review of such order by filing in

the court of appeals of the United States ... within thirty days after the date of service of such order, a written petition praying that the order of the Corporation be modified, terminated, or set aside....

### A. The National Housing Act Did Not Divest The District Court of Jurisdiction Over Securities Law Violations

■ The anti-fraud provisions of the 1934 Securities Exchange Act apply to the sale of stock by a savings and loan association. *Tcherepnin v. Knight*, 389 U.S. 332, 340–42, 88 S.Ct. 548, 555–56, 19 L.Ed.2d 564 (1967). The National Housing Act does not contain any language creating an exception from the federal securities laws for stock issued as the result of a bank conversion. Instead, Congress expressed its intention *not* to repeal any law prohibiting any conduct in connection with an application for a bank conversion of the National Housing Act, 12 U.S.C. § 1730a(*l*). Section 1730a(*l*) provides in pertinent part that: "[n]othing contained in this section ... shall be interpreted or construed as approving any ... violation of existing law...." We believe that the plain meaning of these words is that in passing the National Housing Act Congress did not intend to preclude any existing cause of action under the antifraud sections of the securities acts or any other law.

■ The National Housing Act does not contain an implicit exception to the anti-fraud securities law under the National Housing Act. In general, implicit repeal is not favored. *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 189, 98 S.Ct. 2279, 2299, 57 L.Ed.2d 117 (1978); *Morton v. Mancari*, 417 U.S. 535, 549, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974). If repeal is to be inferred, there must be actual Congressional intent to do so, which is "clear and manifest." *Posadas v. National City Bank*, 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936); *see also Amalgamated Transit Union v. Metropolitan Atlanta Rapid Transit Authority*, 667 F.2d 1327, 1334 (11th Cir.1982) (holding that if "clear

evidence of affirmative congressional intent is lacking, we cannot infer that Congress has legislated silently."). In this case, Congress has expressed the intent *not* to except bank conversion securities from the protective provisions of existing securities laws.

■ In the absence of clear Congressional intention, implied repeal must be based on the fact that the statutes at issue are irreconcilable, *Morton*, 417 U.S. at 550, 94 S.Ct. at 2482, or there is "plain repugnance" between them. *Gordon v. New York Stock Exchange*, 422 U.S. 659, 682–83, 95 S.Ct. 2598, 2611–12, 45 L.Ed.2d 463 (1975). We can find no incompatibility between the anti-fraud provisions of securities laws and the National Housing Act. Both statutes protect shareholders who purchase stock in a savings institution from violations of the law.

Our construction of the National Housing Act is shared by the Securities Exchange Commission and apparently by the FHLBB. In a comment to amendments adopted to 12 C.F.R. Parts 536b, 563c, and 563d, the Board opined as follows:

> In addition, it is desireable, and as regards the Board's 1934 Act regulations, promoted by statute, that the Board's disclosure regulations approximate those of the SEC because (1) the antifraud provision of the federal securities laws are applicable to all offers for sale of securities, assuming the use of jurisdictional means....

48 Fed.Reg. 31,614, 31,615 (July 11, 1983).

In its amicus curiae brief in this matter, the Securities and Exchange Commission argues that "there can be no question that the antifraud provisions of the federal securities laws protect defrauded purchasers of stock issued by such institutions." The Securities and Exchange Commission also notes that "[n]othing in the statutory scheme governing conversions divests jurisdiction under the securities laws for claims alleging fraud in a sale of stock by a converting institution."

██ Under the principle of deference to administrative interpretations, we must defer to an agency's construction of the statutes it has been mandated to interpret unless that construction would not have been sanctioned by Congress. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844-45, 104 S.Ct. 2778, 2782-83, 81 L.Ed.2d 694 (1984).

██ The Commission's conclusions are also supported by an analysis of the relevant statutes. Section 1730a(k) is limited by its terms to the right to review by a party aggrieved by an "order" of the FHLBB approving or disapproving a conversion plan. 12 U.S.C. § 1730a(k). The action is directed against the FHLBB. The relief provided by section 1730a(k) is limited to the modification, termination, or the setting aside of the order. The statute makes no reference to the right to maintain a private cause of action against the savings institution by a person who has suffered damages as the result of misrepresentations in a *stock offering circular.* In fact, the FHLBB disclaims responsibility for the accuracy of any information contained in offering circulars. 12 C.F.R. § 563b.7(d). In the face of such disclaimer, an order approving an application of a conversion plan does not relate in any way to the right of the purchaser of stock to seek damages against the savings institutions for any misrepresentations in the offering circular.

The offering circular issued by Pacific First in this matter contained the following notice:

THESE SHARES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL HOME LOAN BANK BOARD OR THE FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION NOR HAS SUCH BOARD OR CORPORATION PASSED ON THE ACCURACY OR ADEQUACY OF THIS SUBSCRIPTION OFFERING CIRCULAR. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

This notice advised the Rembolds and other prospective shareholders that the FHLBB did not consider the representations contained in the stock offering circular in approving the conversion plan. Under such circumstances, a challenge in this court of the order approving the conversion plan on the ground that the savings institutions made fraudulent statements in the offering circular would appear to be futile. We would expect that the record of the proceedings before the FHLBB would be silent concerning the accuracy of any representations in the stock offering circular.

In addition, the construction of section 1730a(k) suggested by the appellees would lead to an unreasonable and unjust result. Section 1730a(k) requires that a person aggrieved by an order approving or disapproving a conversion plan file for review in this court within 30 days. A 30 day limitations period to discover the existence of fraud in a stock offering is patently unreasonable especially in those situations where the stock sale may not occur until after the deadline has expired. Whenever possible, statutes should be interpreted to avoid unreasonable results. *American Tobacco Co. v. Patterson*, 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748 (1982). We are confident that had Congress intended to make such a radical change in the statute of limitations for an action based on fraudulent representations it would have provided us with an unmistakeable expression of its purpose.

We conclude that the enactment of section 1730a(k) did not divest the district court of subject matter jurisdiction over a stockholder's private cause of action against a savings institution based upon alleged misrepresentations in a stock offering circular issued following FHLBB approval of a conversion plan.

## B. The Complaint Purports To Assert A Securities Law Violations

In determining that it lacked subject matter jurisdiction, the district court relied solely on the decision of the Tenth Circuit in *Harr v. Prudential Federal Savings & Loan Association*, 557 F.2d 751 (10th Cir. 1977), *cert. denied*, 434 U.S. 1033, 98 S.Ct.

766, 54 L.Ed.2d 780 (1978). There are critical factors that distinguish *Harr* from the matter before this court.

In *Harr*, the plaintiffs were depositors in a mutual savings institution. They received free stock following the bank's conversion to a stock form of ownership. The plaintiffs filed two actions in which they asserted that the proxy materials filed in support of the application for conversion were fraudulent. The plaintiffs sought review of the order approving the plan in an action against the FHLBB filed in the Court of Appeals for the Tenth Circuit. The decision in this matter is reported in *Harr v. Federal Home Loan Bank Board,* 557 F.2d 747 (10th Cir.1977), *cert. denied,* 434 U.S. 1033, 98 S.Ct. 766, 54 L.Ed.2d 780 (1978). In this action the plaintiffs alleged, *inter alia,* that the proxy solicitation material was "misleading and false." *Id.* at 749. The *Harr* plaintiffs also filed an action against the savings institution in the district court. There they claimed that the conversion plan was "unfair and itself deceptive" which violated their rights under Rule 10b–5 of the Securities Exchange Commission. *Harr v. Prudential Federal Savings,* 557 F.2d 752.

The Tenth Circuit's opinions in each matter were written by the same circuit judge and decided on the same date. The Tenth Circuit concluded that the complaint filed in the district court was "directed to matters which are part and parcel of the plan of conversion approved by the Board." *Harr v. Prudential Federal Savings,* 557 F.2d at 754. The court explained its decision as follows:

> The subject matter, the nature of plaintiffs' claim, and the arguments before this court demonstrate that the relief sought can only be afforded by a challenge to the Bank Board's action as the basic decision and authorization for the acts and consequences complained of.

*Id.* at 754.

In *Harr* no claim was made, as in the instant matter, that fraudulent and negligent representations were made in a stock offering circular. No allegation was made that the plaintiffs suffered monetary losses because they were induced to purchase stock in reliance on fraudulent representations. Instead, the primary objective of the plaintiffs in *Harr* was to set aside, or terminate the order because of deceptive fraud in the plan for conversion. The Tenth Circuit did not suggest that the National Housing Act precludes a private cause of action against a savings institution based on fraudulent representations in an offering circular. This issue was not before the court in *Harr*.

After the briefs were submitted in this matter, appellees furnished this court with a copy of the decision of the Eleventh Circuit in *Craft v. Florida Federal Savings & Loan Association,* 786 F.2d 1546 (11th Cir. 1986). The *Craft* case does not assist us in our task. The Eleventh Circuit was not presented with the question we must decide. The court in *Craft* reviewed the complaint and concluded as follows:

> We view the Crafts' anti-fraud claims as bare bones allegations made to escape the exclusive review provisions of the Review Statutes. They do not allege any false or misleading statements. The allegations concerning Kidder's final appraisal are conclusory and fail to show that they made any purchases in reliance on it. Kidder is not named as a defendant in this action. All of the claims derive from Crafts' basic contention that they were entitled by the Bank Board's regulations to be restricted after the Bank Board approved the updated appraisal and the issuance of additional conversion stock.

*Id.* at 1554.

Unlike the complaint before the court in *Craft,* the Rembolds' claims contain more than "bare bones allegations" of fraud. They allege that they acted in reliance on false representations in making purchases of stock. They have named the appraisers as a party. They did not base their complaint on an alleged violation of any regulation of the FHLBB regarding the approval of a conversion plan. Instead, the Rembolds claim they were defrauded as a result

 

of their reliance on representations in the stock offering circular.

Finally, the Eleventh Circuit in *Craft* carefully warned against reliance on its decision to resolve issues not addressed.

> Before departing from this subject we add this word of caution. We are not called upon here to decide, nor do we express any views concerning the jurisdiction *vel non* of the district court under the federal securities laws when securities fraud is properly alleged and there has been Bank Board apporoval of a savings and loan conversion.

*Id.*

### III. CONCLUSION

The district court erred in its conclusion that it lacked subject matter jurisdiction over the fraud claims alleged by the Rembolds. The review provisions of the National Housing Act regarding challenges to orders of the FHLBB do not apply to a private cause of action against a savings institution for fraudulent representations in a stock offering circular.

The only issue before this court is whether the district court had subject matter jurisdiction over the Rembolds' complaint. We need not address appellee's argument that the Rembolds have "not really" asserted security violations but have "bootstrapped" their opposition to the conversion into securities law and common law fraud claims. We have noted that the district court is not deprived of jurisdiction because of the inclusion of those claims. Appellee's argument that the alleged misrepresentations do not actually go to the securities law and common law fraud claims, but rather constitute an attack on the conversion, should be addressed to the district court as an argument on the merits, not on jurisdiction. *See generally Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 477–78, 97 S.Ct. 1292, 1302–04, 51 L.Ed.2d 480 (1977) (upholding dismissal of complaint alleging faulty corporate business judgment rather than genuine securities violations); *Panter v. Marshall Field & Co.,* 646 F.2d 271, 287–88, 299 (7th Cir.1981)

(dismissing "bootstrap" claim). We have not determined nor do we express any opinion on the merits of the allegations in the complaint under Fed.R.Civ.P. 9(b) or 12(b)(6) or 56. Those issues must first be addressed by the district court.

The Clerk of this Court is directed to calendar any further appeals in this matter before this panel.

The judgment is REVERSED.