**PENINSULA FEDERAL SAVINGS AND LOAN ASSOCIATION, a United States corporation, Plaintiff,**

v.

**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, in its corporate capacity and as receiver for Sunrise Savings and Loan Association of Florida, a Florida savings and loan association, and as receiver for the successor in interest to Sunrise Savings and Loan Association of Florida, Sunrise Savings and Loan Association, a Federal savings and loan association, and Sunrise Mortgage Corporation of Florida, a Florida corporation, Defendants.**

No. 86–2095–Civ.

United States District Court, S.D. Florida.

June 11, 1987.

Smathers & Thompson, Miami, Fla., for plaintiff.

Fowler, White, Burnett, Hurley, Banick & Strickroot, Miami, Fla., for defendants.

ORDER DENYING MOTION TO DISMISS SECOND AMENDED COMPLAINT AND GRANTING LIMITED PRELIMINARY INJUNCTION

ARONOVITZ, District Judge.

THIS ACTION is before the Court upon:

A.: Motion To Dismiss Second Amended Complaint for lack of subject matter jurisdiction filed by the Defendant, Federal Savings and Loan Insurance Corporation ("FSLIC") in its corporate capacity and as receiver for Sunrise Savings and Loan Association, a federal savings and loan association.

B.: Motion For A Preliminary Injunction filed by the Plaintiff, Peninsula Federal Savings and Loan Association ("Peninsula"), against defendants.

**SUMMARY OF RULING**

█ This Court holds that plaintiff's alleged claim, if proven, is not only a pre-receivership claim for relief by a participant in a mortgage loan, but likewise integrally involves an adversarial claim for declaration and construction of rights allegedly arising during existence of the receivership and asserted by the plaintiff against FSLIC in its corporate capacity and as receiver for Sunrise Savings and Loan Association of Florida and as the receiver for the successor in interest thereto, namely New Sunrise Savings and Loan Association of Florida. Therefore, exhaustion of administrative remedies before FHLIC/FHLBB is not necessary in these circumstances. The Court has subject matter jurisdiction to adjudicate this particular claim and is not barred from doing so by statutory prohibition which might otherwise apply to the settlement, compromise, or release of pre-receivership claims by FHLIC/FHLBB. Accordingly, this Court retains jurisdiction for adjudication on the merits of plaintiff's claims and enters a limited preliminary injunction.

**BACKGROUND**

The well-pled allegations of the Complaint to which the motion to dismiss is addressed claim that on or about January 27, 1984, Sunrise Savings and Loan Association of Florida ("Sunrise") made a mortgage loan in the principal amount of $13,500,000.00 to Mutiny Ltd., a Florida limited partnership which owned and operated the Hotel Mutiny in Coconut Grove, Florida ("Mutiny"). On March 20, 1984, Sunrise sold a participation ownership in that mortgage loan in the sum of $1,450,150.00 (an 11.11% interest) in connection with which a Trust Agreement was entered into between said parties. On July 18, 1985, the Florida Home Loan Bank Board ("FHLBB") appointed FSLIC as receiver for Sunrise for the purpose of liquidation (2nd Am.Comp. ¶ 31). FSLIC immediately reopened Sunrise under an interim contract management arrangement and transferred and assigned all of the assets and liabilities of Sunrise to a new, federally chartered institution, Sunrise Savings and Loan Association, a federal savings and loan association ("New Sunrise") for the purpose of liquidating Sunrise. Subsequently, on September 12, 1986, FHLBB again appointed FSLIC as receiver for New Sunrise which then became Beach Federal.

The loan to Mutiny went into default and on April 15, 1985, Sunrise brought foreclosure proceedings in state court. Claiming to be unaware of the recently filed foreclosure action, Peninsula in turn, also sued in state court, to foreclose the same mortgage based on its interpretation of ¶ XVIII of the Trust Agreement which permitted the holder of the next largest interest in the mortgage to take over and manage same if Sunrise went into receivership. Peninsula's action was dismissed and thereupon Peninsula intervened in Sunrise's foreclosure suit.

From approximately July 18, 1985 until September 12, 1986, FSLIC operated New Sunrise through a Management Agreement with AmeriFirst Federal Savings and Loan Association. Plaintiff also alleges that:

"... Peninsula, on the one hand, and FSLIC, on the other hand (by and

through its agent, New Sunrise) entered into an accord memorialized in a letter settlement agreement dated August 20, 1985 (signed and accepted by FSLIC's agent on August 27, 1985) [hereafter the "August 1985 Settlement Agreement"] ..." [Second Amended Complaint, ¶ # 59].

Plaintiff claims that by virtue of said August 18, 1985 Settlement Agreement, FSLIC on August 27, 1985, agreed that proceeds of the sale of the Mutiny would be set aside, segregated, and available to pay the claims of Peninsula. In other words, plaintiff maintains that the Settlement Agreement reaffirms what it claims were pre-existing rights under the Trust Agreement to have its funds or its portion of proceeds derived from the Mutiny's mortgage loan to be set aside and segregated and not commingled with other assets of the defunct Sunrise and/or New Sunrise. It claims FSLIC as receiver is bound by reason of an agency relationship arising out of the entry into the Settlement Agreement which presumably was not effectuated without the approval, tacit or otherwise, of the receiver. That Settlement Agreement also gave Peninsula rights to be consulted and to have input on future business decisions affecting the property, including offers of purchase. On September 12, 1986, FSLIC closed New Sunrise and reopened as yet another federal, Beach Federal. Although not stated in its Second Amended Complaint, it is apparently uncontroverted that in the state foreclosure suit on October 3, 1985, the State Circuit Court granted Peninsula's motion to impress lien on the proceeds of the sale of the property and ordered that if a person other than New Sunrise was the successful bidder at the foreclosure sale, the total sum found to be due Sunrise would be disbursed jointly to counsel for New Sunrise and counsel for Peninsula pending further order of court or agreement. New Sunrise, however, was the successful bidder for the Mutiny at the foreclosure sale; and later acquired title to the property from Mutiny.

## PLAINTIFF'S CLAIMS

The Second Amended Complaint asserts the following claims:

*Count I*—Declaratory Judgment/Specific Performance/Breach of Trust Agreement.

*Count II*—Declaratory Judgment/Specific Performance/Breach of August 1985 Settlement Agreement which Peninsula alleges is binding upon FSLIC.

*Count III*—Beach of Trusteeship Duties against FSLIC/Mandatory Injunction.

*Count IV*—Constructive Trust with respect to $1,960,150.00 (11.11% interest), plus interest and costs.

*Count V*—Action to Quiet Title as to 11.11% ownership interest pursuant to 28 U.S.C. § 2409(a).

## THE PARTIES' CONTENTIONS

FSLIC contends that federal statutes and regulations governing its receivership of failed savings institutions

(a) grant it complete power to take all necessary actions to liquidate the failed institution,

(b) establish an administrative procedure for resolving all claims against the institution, and

(c) provide that no court may restrain or affect its actions as receiver.

Accordingly, FSLIC argues, there is no subject matter jurisdiction to adjudicate claims against a failed institution because such action would restrain or affect its powers as receiver to resolve claims. Peninsula opposes FSLIC's motion on both statutory and constitutional grounds. Peninsula argues first that the statutes do not authorize FSLIC to adjudicate claims and, alternatively, that if the statutes contain such authority, they are an unconstitutional delegation of judicial authority.

This Court recognizes that § 5(d)(1) of the Home Owners' Loan Act ("HOLA") authorizes the Bank Board to enforce compliance with the statutory duties and obligations by federally-chartered savings and loans and state chartered institutions that are insured by FSLIC. 12 U.S.C.A. § 1464(d)(1). The enforcement powers granted to the Bank Board range from the issuance of cease and desist orders, to administrative actions to remove an officer or

director of an association, to the appointment of a conservator or receiver of an association. *Id.* Upon finding that at least one of five grounds exist, the Bank Board may appoint a conservator or receiver. *Id.* § 1464(d)(6)(A) (West Supp.1986).

New Sunrise was a federally-chartered savings and loan association, the accounts of which are insured by FSLIC. The Bank Board found that New Sunrise was insolvent and, pursuant to formal resolution, appointed FSLIC as receiver. Resolution No. 86–892. Section 406 of the NHA authorizes FSLIC as receiver to:

(a) take over the assets of and operate the association;

(b) take necessary action to put the association in a solvent condition;

(c) merge the association with another insured institution;

(d) organize a new federal association to take over its assets;

(e) liquidate its assets in an orderly manner; or

(f) make such other disposition as it deems appropriate. *Id.* § 1729(b)(1) (West Supp.1986).

The statute directs FSLIC to take such action as "it deems to be in the best interests of the association, its savers, and [FSLIC]." *Id.* As an essential complement to this authority, defendant asserts that HOLA prohibits parties asserting claims to the assets of an association in receivership from pursuing those claims in court. 12 U.S.C.A. § 1464(d)(6)(C) (HOLA); *see also id.* § 1729(d) (NHA) (FSLIC's actions as receiver subject *only* to regulation by the Bank Board). In this case, FSLIC organized Beach Federal Savings and Loan Association, a new federal association, to take over certain of the assets and liability of New Sunrise, and began the orderly liquidation of the remaining assets and liabilities, including the assets and liabilities at issue in this case.

Section 5(d)(6)(C) of HOLA directs that, "no court may take any action [to] ... restrain or affect the powers or functions of a conservator or receiver.". 12 U.S.C.A. § 1464(d)(6)(C). Similarly, the National Housing Act ("NHA") provides that

FSLIC, as receiver of a failed federal institution, may do all things necessary in connection with the liquidation of the institution, subject only to the regulation of the Bank Board. *See id.* § 1729(d).

Several courts have construed the above statutory provisions to require the dismissal for lack of subject matter jurisdiction of any claims asserted by any party against the closed association, the receiver, or the receivership assets. *North Mississippi Savings and Loan Association v. Hudspeth,* 756 F.2d 1096 (5th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986); *Sunrise Savings and Loan Association v. LIR Development Co.,* 641 F.Supp. 744 (S.D.Fla.1986); *Baer v. Abel,* 637 F.Supp. 347 (W.D.Wash.1986); *Lyons Savings and Loan Association v. Westside Bancorporation, Inc.,* 636 F.Supp. 576 (N.D.Ill.1986); *Murdock—SC Associates v. Beverly Hills Federal Savings and Loan Association,* 624 F.Supp. 948 (C.D.Cal.1985).

According to FSLIC, *Hudspeth* is the seminal decision interpreting the denial of jurisdiction in HOLA and NHA to hear claims asserted against receivership assets. *Hudspeth* holds that no court can adjudicate or enforce any right against the receiver or its assets, or delay or otherwise effect any allocation or distribution of receivership assets in satisfaction of a claim. 756 F.2d at 1109–02. The case further holds that any suit seeking such relief must be dismissed and the claims pursued through the Bank Board's administrative processes. *Id.* at 1102–03.

*Hudspeth* involved a pre-receivership claim against the defunct savings and loan association, and all rights thereunder arose by law and/or papers or facts in existence prior to the receivership. That is not the circumstance in this case which also involved both a pre-receivership claim and an adversarial claim asserted against FSLIC in both its corporate and receivership capacities. So while the statutory language referred to by FSLIC is good law, it does not apply to the adjudication by FSLIC of claims which arise integrally associated or connected with rights claimed during re-

ceivership and asserted against FSLIC. The adjudication of such rights is not supported by any statutory authority to mean or require that the exhaustion of administrative remedies to the FHLBB is necessary or required or that it prevents this Court from asserting its traditional jurisdictional authority to adjudicate adversarial claims; particularly, if no Congressional intent or language specifically prohibits subject matter jurisdiction in the United States District Court under such circumstances.

Had Congress intended to include adjudication among the powers of FSLIC as receiver, or to divest the courts of jurisdiction under § 1730(k)(1) and confer jurisdiction upon FSLIC to hear all cases in which FSLIC is a party, as receiver, it presumably would have done so expressly; when Congress has intended to vest exclusive jurisdiction in FHLBB or FSLIC over a particular matter, it has done so expressly and with detailed procedural guidelines. *See, e.g.,* 12 U.S.C. § 1725(j)(2) and § 1730a(k). *See also Harr v. Prudential Federal Savings & Loan Ass'n,* 557 F.2d 751 (10th Cir.1977), *cert. denied,* 434 U.S. 1033, 98 S.Ct. 766, 54 L.Ed.2d 780 (1978).

Peninsula strongly urges the Court to accept and apply the teachings advanced in *Morrison-Knudsen Co., Inc. v. CHG International, Inc., et al.,* 811 F.2d 1209 (9th Cir.1987) which held that FSLIC has no power to adjudicate creditor claims, although exhaustion of administrative remedies, nevertheless, may be a basis for dismissal or stay of proceedings or remand for further consideration. That court favorably cited § 1730(k)(1) as evidence that claims against FSLIC's receivership assets would be amenable to judicial resolution. *Morrison-Knudsen* also examines any prohibition against the right of the courts to adjudicate a claim within the perspective of *Northern Pipeline Construction Co. v. Marathon Pipe Line Company, et al.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) scrutiny. It points out that the creditors' claims present a "private right" and not a "public right" and therefore is a claim assumed to be at the *core* of matters normally received by Article III courts.

Just as in *Morrison-Knudsen,* this Court does not deem it necessary to pass on those matters, including whether or not a "public" or "private" right is involved or with regard to any other constitutional attacks asserted by Peninsula herein. Rather, this Court holds that the claim herein asserted is not totally a pre-receivership claim as were the claims in *Morrison-Knudsen* and *Husdpeth,* but in fact relate not only to a pre-receivership claim, but also to adversarial claims arising by way of novation/modification and/or constructive trust or agency or otherwise during the receivership, and allegedly involving the receiver itself. Under this examination, there is no statutory prohibition against the Court recognizing subject matter jurisdiction without reaching any constitutional issue.

Thus, on the one hand, FSLIC insists that this Court should accept *Hudspeth* and apply its ruling; while Peninsula equally asserts as strongly that this Court should take its guidance from *Morrison-Knudsen.* It is not necessary for this Court in entering its ruling to accept *in toto* the teachings of either decision.

It is noted that *Morrison-Knudsen* recognizes that in some circumstances, factors should be considered as to whether or not resort should be had to the administrative process, notwithstanding its holding that FSLIC has no power to adjudicate creditor claims. Without embracing the ruling which lead to the determination, but nevertheless, in the exercise of prudence and judicial discretion, this Court has reviewed the factors which *Morrison-Knudsen* suggests could be helpful in making the determination whether or not the matter should be referred for the exhaustion of the administrative process. In so doing this Court determines:

1. That because of a likely admixture of pre-receivership claims with the assertion of rights against FSLIC, either a severance of the claims may be necessary, or a partial determination would result which could be contrary to the result obtained in part by administrative process, and in part by Court, so

that the administrative process would be futile.

2. The administrative process involving a claim such as is here involved is not well-developed because it is a mixed claim.

3. From the very nature of the claims asserted, it is unlikely that a prompt decision can be forthcoming administratively in view of the admixture of issues. This Court is prepared to accelerate and expedite this action.

4. An exhaustion requirement would not be fair to the parties in light of their resources since the availability of such resources to FSLIC far exceeds that available to Peninsula. Also, to require resort to administrative process would narrowly restrict Peninsula's ability to obtain a full adjudication of its claims or rights since it would thereafter likely be limited to Court review of the agency's determination under the Administrative Procedure Act, on the basis of the record compiled during the administrative proceedings and under different standard of review and/or proof than available in this Court action.

5. The rights asserted by Peninsula are peculiar to it and relate to a particular loan and therefore rights of other parties would not likely be impaired or affected.

6. The interest of judicial economy would not be served by requiring exhaustion because of the admixture of claims.

7. FSLIC has not demonstrated that a failure to require exhaustion would unduly interfere with its functioning since the claim relates to a specified and discrete claim, and not to the general assets and liabilities assumed through the receivership or passed onto the successor savings and loan association.

Thereupon, this Court, without accepting or applying the full impact of either *Hudspeth* or *Morrison-Knudsen*, holds that the peculiar circumstances pertinent to the claim asserted establish valid grounds, not contrary to any statutory authority for subject matter jurisdiction to be retained by the United States District Court and the matter adjudicated through that Court.

## PENINSULA'S APPLICATION FOR A LIMITED PRELIMINARY INJUNCTION

■ In essence, Peninsula is seeking no more by way of a preliminary injunction than was provided by the Settlement Agreement Letter in August 1985; that is, FSLIC to furnish notice of a contract of sale to Peninsula and segregate proceeds of the sale of the Mutiny (*See* Letter Agreement dated August 20, 1985, Exhibit 6, attached to Second Amended Complaint). It is designed to protect and segregate that particular asset claimed by Peninsula so that it does not become commingled with other assets. To deny the request for a limited preliminary injunction would relegate Peninsula to the position of a claimant against the government agency in the face of an unadjudicated determination, which if adjudicated, could result in a judgment asserted against an identifiable interest. The granting of a preliminary injunction will not disserve the public interest since equity upholds a trust and Peninsula is asserting, not only a constructive trust on its share, but likewise is claiming a fee and/or proprietary interest through quiet title action to the extent of 11.11%. Without the entry of a preliminary injunction, this Court may not be in a position to ultimately grant the relief sought. No harm to FSLIC exists if it is required to post 11.11% of the proceeds from the sale of the Mutiny and keep it segregated until an ultimate determination is made in the Court on the Complaint herein.

There is a substantial likelihood of success on the issue of a constructive trust and particularly with regard to the Settlement Agreement entered into during the existence of the receivership. The Court therefore deems that the four requirements necessary to the issuance of a preliminary injunction exist here in that:

1. Granting of a preliminary injunction will not disserve the public interest;

2. There exists a substantial threat of irreparable harm to Peninsula if an injunction is not granted;

3. There exists a substantial liklihood of success on the merits; and;

4. The threatened injury to Peninsula outweighs any possible harm to FSLIC. *Johnson v. U.S. Department of Agriculture,* 734 F.2d 774 (11th Cir.1984); *Canal Authority of the State of Florida, et al. v. Callaway,* 489 F.2d 567 (5th Cir.1974). Finally, since the injunction herein granted is really giving effect to what the parties agreed upon in the Settlement Agreement, it is fair, equitable and just.

This Court has reviewed the Second Amended Complaint and all of its exhibits, the defendants' Motion to Dismiss, the staggering submissions of literally hundreds of pages of memoranda of law, proposed memorandum opinions submitted by each side, extensive oral argument by counsel, and all other matters pertinent in the record. Thereupon, it is

ORDERED and ADJUDGED as follows:

1. Defendants' Motion to Dismiss the Second Amended Complaint be and the same is hereby DENIED as to each Count thereof. The Court retains jurisdiction of this action for adjudication. The application for exhaustion of administrative remedies and process is DENIED. Defendant shall answer the Second Amended Complaint WITHIN 20 DAYS HEREFROM. This Court will then exercise its best efforts to accelerate the case toward trial and adjudication.

2. If a sale of the Mutiny property occurs, then upon closing, a sum equal to 11.11% of the net proceeds at closing of the sale of the Mutiny shall be segregated by FSLIC and placed into an interest bearing account in a bank or savings and loan association located in Miami, Florida. These funds shall remain in said account pending further Order of this Court or written agreement between counsel for FSIC and Peninsula. If a security bond is deemed necessary or required, the parties may apply to the Court for an Order establishing the bond to be posted.

3. FSLIC shall advise counsel for Peninsula as to future business decisions affecting the Mutiny property and furnish counsel for Peninsula, not less than once a month, a written report as to the status of efforts to sell the property. Paragraphs 2 and 3 hereof shall be and constitute a PRELIMINARY MANDATORY INJUNCTION subject to the further Order of this Court and/or dissolution for good cause shown.[1]

---

1. FSLIC also argues to the Court that District Judges in other divisions of the Southern District of Florida have issued Orders seemingly consistent with the holding of *Hudspeth.* However, they appear to be pre-receivership claims and thereupon, in a different posture than the mixed claim herein involved.