953 F.2d 1391
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 EQUIVEST FINANCIAL CORPORATION, an Oklahoma corporation,
Plaintiff-Appellant,
v.
FEDERAL HOME LOAN BANK BOARD, Defendant-Appellee.
 Nos. 89-5190, 89-9560.
 United States Court of Appeals, Tenth Circuit.
 Jan. 27, 1992.
 
 Before TACHA, SETH and McWILLIAMS, Circuit Judges.
 ORDER AND JUDGMENT*
 TACHA, Circuit Judge.
 
 
 1
 Appellant Doe Corporation (Doe) appeals an order of the district court dismissing Doe's complaint for lack of subject-matter jurisdiction. Doe also petitions this court to review an action of the Federal Agency pursuant to 28 U.S.C. §§ 1464(i), 1730a(k) & 1631. The Federal Agency has filed a motion to dismiss Doe's petition for review on the grounds that Doe's petition is untimely. We affirm the district court's order and grant the Federal Agency's motion to dismiss.
 
 
 2
 We review de novo a district court's ruling on a motion to dismiss. See Morgan v. City of Rawlins, 792 F.2d 975, 978 (10th Cir.1986). On appeal, we presume that all of the allegations in Doe's complaint are true. Curtis Ambulance of Fla., Inc. v. Board of County Comm'rs, 811 F.2d 1371, 1374 (10th Cir.1987).
 
 
 3
 The district court concluded that it lacked subject-matter jurisdiction over Doe's complaint because 12 U.S.C. § 1730a(k) requires that a party aggrieved by an order of the Federal Agency bring an appeal in the appropriate United States Court of Appeals. Doe contends that its complaint does not attack a resolution of the Federal Agency and that its complaint seeks neither modification nor rescission of a resolution of the Federal Agency.
 
 
 4
 After reviewing the complaint, we cannot agree. The relief that Doe seeks clearly constitutes a collateral attack on the resolutions of the Federal Agency. If the district court were to grant Doe the relief it seeks, it necessarily would nullify the Federal Agency's resolutions. Pursuant to § 1730a(k), this type of request can only be brought in the appropriate United States Court of Appeals. See Harr v. Prudential Fed. Sav. and Loan Ass'n, 557 F.2d 751 (10th Cir.1977), cert. denied, 434 U.S. 1033 (1978). Therefore, the district court lacked subject-matter jurisdiction to entertain this action.
 
 
 5
 Turning to the petition for review filed in this court, we find that it is untimely. Section 1730a(k) requires that the petition for appeal be filed within thirty days after the date of service of the order. Doe was served with the order on April 24, 1989. The petition for review was not filed until November, 1989. Under these circumstances, it is clear that the appeal was not timely.
 
 
 6
 In an attempt to save its petition, Doe contends that its action filed in the district court should be transferred to this court pursuant to 28 U.S.C. § 1631. Doe filed its action in the district court within thirty days of the final agency action. Thus, if we transferred the district court action, Doe's appeal would be timely. However, we conclude that such a transfer would not be in the interest of justice. Section 1631 is designed to aid litigants who are " 'confused about the proper forum for review.' " In re McCauley, 814 F.2d 1350, 1352 (9th Cir.1987) (quoting American Beef Packers, Inc. v. ICC, 711 F.2d 388, 390 (D.C.Cir.1983)). This case does not present a situation where a litigant was confused over the proper forum for review. Doe filed its action in the district court in an attempt to avoid the judicial review provision of § 1730a(k). Therefore, under the circumstances of this case, a § 1631 transfer is inappropriate.
 
 
 7
 Accordingly, the district court's order is AFFIRMED, and the Federal Agency's motion to dismiss Doe's petition is GRANTED.
 
 SETH, Circuit Judge, dissenting:
 
 8
 I must respectfully dissent from the Judgment of the majority. The complaint of Equivest Financial Corp. asserts that FHLBB has wrongfully taken and has kept Equivest's property. It seeks a declaratory judgment that there was no acquisition agreement among the several parties, and that the property which was transferred is wrongfully withheld.
 
 
 9
 The determination in the trial court was on the complaint alone. There were no affidavits and no testimony. The parties agree that the allegations in the complaint of Equivest must thus be taken as true. The trial court ordered a dismissal of the complaint under Federal Rule 12(b)(1). It held that the proceeding could only be heard by the Court of Appeals under 12 U.S.C. §§ 1464(i)(4) and 1730a(k). The trial court considered the suit to be an attack on the Resolutions issued by the FHLBB.
 
 
 10
 Equivest also later filed a petition for review in the appellate court and sought to have the action transferred to the Court of Appeals under 28 U.S.C. § 1631.
 
 
 11
 Equivest Financial Corp. filed an application with the then Federal Home Loan Bank Board to "bail out" a troubled savings and loan association. Equivest expected to do this without financial assistance of the FHLB or the FSLC. An application for consent to convert the Savings and Loan into a stock company was also made. Equivest was to purchase the stock by the transfer of tangible assets. Arrangements were made with the Savings and Loan, and extended negotiations between Equivest and representatives of the Home Loan Bank Board, specifically officials in the General Counsel's office, were commenced. These negotiations were as to what should be the basic financial structure of the converted Savings and Loan. These were to be conditions to be attached to the agency's approval of the conversion and purchase applications which would describe the structure, and also the Board's control over policies and personnel. These details had to be agreed upon before the Board would approve by a Resolution, and Equivest could or could not then accept the conditions in the Resolutions. If it agreed, it could proceed with the transaction with State Federal.
 
 
 12
 As mentioned, if the conditions were agreed to by Equivest and agreed to by the Board, a Resolution of the Board would contain the conditions and recite acceptance. An applicant could still take or leave the approval--the Resolution. The Board acknowledges this in its brief. There was thus no "order" in any sense entered which required action from the applicant or any other kind of "order" by the Board. If the Resolution was actually accepted, and the applicant proceeded with the transaction, the applicant would be bound to adhere to the conditions of the Resolution of approval.
 
 
 13
 The applicant in this case did not accept the Resolutions 86-1295 and 86-1296 by act or expressly because of unilateral changes in the negotiated conditions made by the Board after the purchase-sale between Equivest and the Savings and Loan was closed, changes which the complaint recites would never have been accepted by Equivest because of their wide departure from the negotiated condition. Equivest advised the Board of the reasons it could not accept. These changes were characterized by the representatives of the General Counsel as "mistakes" which would be corrected.
 
 
 14
 The closing of the sale-purchase was set for December 30, 1986. On that day, as had also been done on at least one day before, Equivest talked on the phone with the officials in the General Counsel's office with whom they had been negotiating the conditions. The officials read to Equivest attorneys what they represented as the final Resolution of approval. This conformed to what had been negotiated. After these December 30 representations and in reliance thereon, the purchase-sale was closed as the General Counsel's office knew it was going to be. Sometime later in January Equivest received Resolutions 86-1295 and 86-1296 which when examined contained substantial changes in basic conditions. Equivest had no previous notice that such unilateral changes would be made and objected. The Resolutions bore the date on the caption of December 30, but the date when they were signed is not indicated.
 
 
 15
 The misrepresentations were thus brought to the immediate attention of the Board and certainly with time for correction or for a recognition by the Board that the Resolutions were rejected by Equivest. The Board nevertheless took no action and proceeded as if the Resolution had been accepted.
 
 
 16
 To these protests, the officials stated that they were "mistakes" which would be corrected. These turned out to be misrepresentations as the prolonged conferences, letters, calls and ultimate refusals demonstrated. These were prolonged because the responses by the Board would be delayed if the letters were answered at all. One of these delays in the Board's response took a year and three months.
 
 
 17
 Equivest persisted in seeking a correction of the mistakes. These efforts extend over a long period of time. In a Board letter it acknowledged that there had been an "unfortunate error," but did nothing about it, the error being the misrepresentation made to Equivest on the closing date when the Resolutions were read to its attorney. Since it was so read it must be assumed it was then in written form--thus written approval.
 
 
 18
 Equivest persisted in its request to correct the "unfortunate mistakes," but finally there was a definite refusal by the Board to consider the matter further in 1989. However, the Board in April 1989 made a further unilateral change, adding new terms not previously discussed to add a requirement of further personal liability on an individual associated with the purchase, Mr. Frates, which apparently could amount to several million dollars.
 
 
 19
 As mentioned, Equivest never accepted the post-closing Resolutions. The Board continued to characterize the misrepresentations made to Equivest as a "mistake," but refused to do anything about it although the Board was made aware of it within a period of several days after it took place. It chose instead to ignore the mistake. The only issue in the case is whether Equivest and Mr. Frates should bear the burden of the "unfortunate mistake" made within the agency, or if it should be corrected by this suit. The problem could easily have been solved by the Board recognizing at the outset that Equivest had not accepted the Resolutions issued after the closing and thus provide a remedy for the "unfortunate mistake."
 
 
 20
 The problem is the "mistake" which was under the circumstances a serious misrepresentation of the contents of a written approval. No one argues that the General Counsel had any authority to approve an application although some extensive authority is delegated to him or his office. The issue is the misrepresentation on the closing day followed by repeated misrepresentations that the matter would be corrected which led Equivest to delay.
 
 
 21
 The issue is whether Equivest should have a remedy for the misrepresentation. It did not accept the Resolutions--they were not orders--it did not have to accept and the complaint recites that it never would have agreed to the changes. The Resolutions were not accepted by a closing and were not accepted by Equivest's continuing objections although it attempted to operate the Savings and Loan on the representation that the mistakes were to be corrected. Of course, the closing was not made on the basis of the Resolutions.
 
 
 22
 The applicant, as mentioned, need not accept them, the Board so acknowledges, and when not accepted they have no significance. Thus under the remedy sought by Equivest the rejected Resolutions can be disregarded as they have no effect. The action is not to change the Resolutions. It certainly is not to rely on the misrepresented Resolutions which were changed, but to obtain a declaratory judgment to be restored to the status quo ante, and to so have a remedy either for the misrepresentations or for the agency's "unfortunate mistake."
 
 
 23
 It is obvious that no official made any intentional misrepresentations and thought in good faith that the mistake would be corrected, but the representations were wrong and Equivest proceeded with the closing resulting in the serious consequences above described. The Board seeks to disassociate itself from the mistakes and the consequences. It is apparent that the Board had no intention of correcting the agency's mistake, and added further conditions never discussed such as the personal guarantee of an individual.
 
 
 24
 As mentioned, the problem could have been solved easily at the outset by the Board but this was not done and much time has passed despite Equivest's persistent attempts to resolve the matter. I am confident that the expertise of the Board and its control is such that an unscrambling of the transactions at this time could be accomplished.
 
 
 25
 The brief of Federal Home Loan Bank Board in 89-9560, at page 14, states:
 
 
 26
 "On or about February 16, 1990, OTS placed State Federal in receivership. However, the obligations Equivest and Mr. Frates assumed under their net worth maintenance and guarantee agreements survive the imposition of a receivership. The funds Equivest and Frates are required to infuse will go to the thrift's receivership estate as a source of protection for State Federal's depositors and creditors, including the federal fund that insured State Federal's deposit accounts--the Savings Association Insurance Fund."
 
 
 27
 I would reverse.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3