

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-10-1995

# Reschini v First Federal

Precedential or Non-Precedential:

Docket 94-3086

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Reschini v First Federal" (1995). *1995 Decisions.* Paper 10.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/10

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 94-3086
_____

ROGER J. RESCHINI
            Appellant

v.

FIRST FEDERAL SAVINGS AND LOAN
    ASSOCIATION OF INDIANA;
                CHARLES L. FRANCE

_____

On Appeal from the United States District Court
   for the Western District of Pennsylvania
            D.C. No. 94-cv-00122
_____

Argued July 11, 1994
_____

Before: SLOVITER, Chief Judge, ROTH, Circuit Judge,
        and POLLAK, District Judge[*]

(Filed January 10, 1995)

            THOMAS E. SWEENEY, JR. (Argued)
            Sweeney & Associates
            7300 Penn Avenue
            Pittsburgh, PA  15208

                Attorney for Appellant

            WALTER A. BUNT, JR. (Argued)
            Kirkpatrick & Lockhart
            1500 Oliver Building
            Pittsburgh, PA  15222

                Attorney for Appellees

_____

[*].  Honorable Louis H. Pollak, United States District Judge for
the Eastern District of Pennsylvania, sitting by designation.

_____

OPINION OF THE COURT
_____

POLLAK, District Judge.

This appeal addresses the dismissal of a suit brought by appellant Roger J. Reschini against appellees First Federal Savings and Loan Association of Indiana (the "Association") and Charles L. France, the chief executive officer of the Association. The complaint alleged that the Association and its chief executive officer had disseminated materially misleading proxy materials in violation of regulations adopted by the federal Office of Thrift Supervision (OTS) in carrying out its supervision of federal savings associations. The allegedly deficient proxy materials sought approval by Association members of the proposed conversion of the Association from a federal (i.e., federally-chartered) mutual savings and loan association to a Pennsylvania-chartered mutual savings bank.

The district court held that §§ 5(i)(2)(B) and 10(j) of the Home Owners' Loan Act (HOLA), 12 U.S.C. §§ 1464(i)(2)(B) and 1467a(j), giving courts of appeals original and exclusive jurisdiction over decisions of the Director of the OTS approving or disapproving conversions of federal savings associations, precluded exercise by the district court of subject matter jurisdiction over Reschini's claim. Accordingly, the district court dismissed the complaint for lack of jurisdiction. On

appeal we consider three questions: (1) whether Reschini's appeal is moot; (2) whether 12 U.S.C. §§ 1464(i)(2)(B) and 1467a(j) constitute an insurmountable bar to district court subject-matter jurisdiction over challenges to proxy materials distributed in connection with the Association's conversion; and (3) if jurisdiction in the district court is not precluded, whether dismissal of this suit was nevertheless required on the ground that the complaint failed to state a cognizable cause of action.

## I

In late December of 1993 or early January of 1994, the Association distributed a notice to its members informing them that a special meeting would be held on January 28, 1994, for the purpose of voting on a conversion plan. Under the plan, the Association would abandon its federal charter and emerge as a Pennsylvania-chartered mutual savings bank known as the Indiana First Savings Bank. A proxy statement outlining the plan's business purposes and effects accompanied the notice.

Depositors in a federally-chartered mutual savings association are, pursuant to HOLA, members entitled to vote on proposals to convert to non-federal status,[1] notwithstanding that the proprietary interest of a depositor-member in a mutual savings association is a chimera. Depositor-members "own the

_____

[1]. 12 U.S.C. § 1464(i)(3)(A)(ii) (discussed _infra_ part III).

mutual, but it is ownership in name only.  They cannot sell what they 'own,' and if they withdraw savings they receive only the nominal value of the account rather than a portion of the mutual's net worth . . . ."  <u>Ordower v. Office of Thrift Supervision</u>, 999 F.2d 1183 (7th Cir. 1993).  On January 25, 1994, Robert Reschini, in his capacity as a depositor-member of First Federal Savings and Loan Association of Indiana, brought suit in the Western District of Pennsylvania against the Association and Charles France, the Association's chief executive officer.  Count I of Reschini's complaint, invoking the district court's federal question jurisdiction, alleged that the proxy statement, in contravention of 12 C.F.R. § 569.4, contained false information regarding the principal business reasons for the proposed conversion and failed to disclose material information about the loss of member voting rights that would accompany the conversion. Reschini sought an injunction against the holding of the special meeting, an order prohibiting use of the proxy statement and requiring a legally sufficient proxy solicitation, costs and attorneys fees, and any other relief deemed just and equitable. Counts II and III of the complaint asserted state law claims.

On the day Reschini commenced suit, Reschini also filed a motion for a temporary restraining order.  The next day, January 26, 1994, the district court, after a brief hearing, entered an order dismissing plaintiff's complaint for lack of subject-matter jurisdiction.  On February 10, 1994, a special

meeting of Association members was held, and the conversion plan was approved by the members.

Reschini filed a notice of appeal from the order of the district court on February 24, 1994. Oral argument in this court took place on July 12, 1994. At the time of oral argument, the proposed conversion was pending before the OTS but had not yet been approved. On October 18, 1994, the Director of the OTS approved the Association's application for conversion; the same day the Association completed its conversion to a Pennsylvania-chartered mutual savings bank.[2]

On November 17, 1994, Reschini filed in this court a petition to modify, terminate, or set aside the order of the OTS Director approving the proposed conversion.[3] We are, however, at pains to point out that the petition for review — an invocation of this court's appellate authority with respect to certain decisions of the OTS Director — has not yet been briefed and argued and is not the subject of this opinion; in this opinion, and our concomitant ruling, we address only the decision of the district court dismissing Reschini's suit against the Association and France.

---

[2]. The record on appeal has been supplemented to include these post-oral-argument events.

[3]. We take judicial notice of the petition for review, filed sub nom. Reschini v. Office of Thrift Supervision, No. 94-3625 (3d Cir. filed November 17, 1994).

As a preliminary matter, we address the contention of the Association and France that this appeal is moot because the special meeting that Reschini sought to enjoin has already occurred and the Association has already converted to a Pennsylvania-chartered savings bank.

"[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." Church of Scientology of California v. United States, 113 S. Ct. 447, 449 (1992) (quoting Mills v. Green, 159 U.S. 651, 653 (1895)). However, "when a court can fashion 'some form of meaningful relief,' even if it only partially redresses the grievances of the prevailing party, the appeal is not moot." Isidor Paiewonsky Assocs., Inc. v. Sharp Properties, Inc., 998 F.2d 145, 151 (3d Cir. 1993) (quoting Church of Scientology, 113 S. Ct. at 450). Such relief need not have been requested in the pleadings. Rather, "it is the court's obligation to grant the relief to which the prevailing party is entitled whether it has been specifically demanded or not." Kirby v. United States Dep't of Housing & Urban Dev., 745 F.2d 204, 207 (3d Cir. 1984).

If we were to find that the district court improperly dismissed Reschini's complaint and if, upon remand, Reschini were to prevail on his claim, it would then be the district court's responsibility to fashion an appropriate decree. In so doing,

the district court would have the authority to deploy a full range of equitable remedies including — if deemed feasible and appropriate — a requirement that the Association and France take steps to reverse the conversion.  Cf. Mills v. Electric Auto-Lite Co., 396 U.S. 375, 386 (1970) (where a merger is obtained through fraudulent proxy statements, "[p]ossible forms of relief will include setting aside the merger or granting other equitable relief"); Edelman v. Saloman, 559 F. Supp. 1178, 1184 (D. Del. 1983) (stating that "a decree nullifying the corporate action taken on the basis of management's proxies" is a traditional form of relief in suits alleging fraudulent proxy materials).  While it is conceivable that the district court might eventually determine that setting aside the conversion would entail undoing what cannot equitably be undone, such a determination would depend upon a fact-specific analysis of the circumstances — an analysis which we are not now in the position to perform.

Because setting aside the conversion remains a possible remedy should Reschini prevail on his claim, Reschini's appeal is not moot.[4]

---

[4].  In arguing that this appeal is moot, appellees cite General Electric by Levitt v. Cathcart, 980 F.2d 927 (3d Cir. 1992), a case which involved allegations of proxy fraud in connection with the election of corporate directors.  Because the directors' terms had expired several months before appellate argument, we dismissed the appeal as moot, stating that a court could grant equitable relief only "by doing the impossible: enjoining the directors from serving expired terms."  General Electric, 980 F.2d at 934.  Here, unlike in General Electric, the vote which utilized the allegedly fraudulent proxy materials continues to have effect.  In General Electric, the directors selected through the allegedly fraudulent election no longer held their positions

Savings association conversions are governed by 12 U.S.C. § 1464(i), codifying § 5(i) of HOLA. Section § 1464(i)(3) sets forth criteria governing conversions of federally-chartered savings associations to state-chartered form (federal-to-state conversions). According to these criteria, a federal-to-state conversion may only be performed "upon the vote in favor of such conversion cast in person or by proxy at a special meeting of

(..continued)
at the time of appeal. Here, in contrast, the result of the allegedly fraudulent vote — i.e., the Association's status as a Pennsylvania-chartered savings bank — remains in force.

Appellees also cite cases addressing denials of motions for preliminary injunctions. In these cases, the appeals were found moot because the actions sought to be enjoined had already occurred. See Scattergood v. Perelman, 945 F.2d 618, 621 (3d Cir. 1990) ("The merger has taken place, and this court has held on numerous occasions that when the event sought to be enjoined in a preliminary injunction has occurred, an appeal from the order denying the preliminary injunction is moot."); Bank of New York Co. v. Northeast Bancorp, Inc., 9 F.3d 1065, 1067 (2d Cir. 1993) ("In general, an appeal from the denial of a preliminary injunction is mooted by the occurrence of the action sought to be enjoined.").

Unlike the situation at bar, these cases addressed appeals from denials of preliminary relief. In such situations it is improper for the appeals court to speculate upon other possible relief available since these issues still lie before the district court. See Tropicana Products Sales v. Phillips Brokerage Co., 874 F.2d 1581, 1582-83 (11th Cir. 1989) (distinguishing between the relief considered on appeal from the denial of a motion for preliminary injunction and the relief considered on appeal from a final judgment on the merits); Marilyn T., Inc. v. Evans, 803 F.2d 1383, 1384-85 (5th Cir. 1986) (rejecting consideration of alternative forms of relief where this would involve "issues [that] have yet to be resolved by the district court"). That approach is inapposite where, as here, we address an appeal from a final judgment.

members or stockholders called to consider such action," pursuant to

> the law of the State in which the home office of the Federal savings association is located, as required by such law for a State-chartered institution to convert itself into a Federal savings association, but in no event upon a vote of less than 51 percent of all the votes cast at such meeting . . . .

12 U.S.C. § 1464(i)(3).

Section 1464(i)(2)(B) establishes a mechanism for judicial review in courts of appeals of orders of the OTS Director authorizing or barring proposed conversions. Specifically, § 1464(i)(2)(B) states that "[a]ny aggrieved person may obtain review of a final action of the Director [of the OTS] which approves or disapproves a plan of conversion pursuant to this subsection only by complying with the provisions of section 1467a(j)." Section 1467a(j) provides in turn for review in courts of appeals.[5]

---

[5]. Section 1467a(j) provides in relevant part:

> Any party aggrieved by an order of the Director under this section may obtain a review of such order by filing in the court of appeals of the United States for the circuit in which the principal office of such party is located, or in the United States Court of Appeals for the District of Columbia Circuit, within 30 days after the date of service of such order, a written petition praying that the order of the Director be modified, terminated, or set aside.

Appellees contend that §§ 1464(i)(2)(B) and 1467a(j), creating an exclusive review mechanism for review of final decisions by the Director of the OTS which approve or disapprove plans of conversion pursuant to "this subsection," § 1464(i)(2)(B), bar district court subject-matter jurisdiction over Reschini's suit.  The district court accepted this reasoning, and accordingly dismissed Reschini's claims.[6]

On appeal, Reschini disputes this conclusion for two reasons.  First, Reschini claims that the term "this subsection," as employed in § 1464(i)(2)(B)'s review provisions, refers only to conversions governed by § 1464(i)(2),[7] and thus does not cover

---

[6].  As stated by the district court:

> Under §5(i)(2)(B) of the Home Owners' Loan Act (HOLA), 12 U.S.C. §1464(i)(2)(B), an aggrieved person must first file his objections with the Director of the Office of Thrift Supervision and then seek review pursuant to 12 U.S.C. §1467a(j).  Section 1467a(j) provides for exclusive jurisdiction within the Court of Appeals.  12 U.S.C. §1467a(j) (1993); Ordower v. OTS, 999 F.2d 1183 (7th Cir. 1993); Harr v. Prudential Savings and Loan Association, 557 F.2d 751 (10th Cir. 1977), cert. denied, 434 U.S. 1033 (1978).  Because the Court of Appeals' jurisdiction is exclusive, this Court is without subject matter jurisdiction.

Reschini v. First Fed. Sav. & Loan Ass'n, No. 94-122 (W.D. Pa. January 26, 1994).

[7].  Section 1464(i)(2) refers expressly to mutual-to-stock conversions, but not to federal-to-state conversions. See 12 U.S.C. § 1464(i)(2)(A) ("No savings association may convert from the mutual to the stock form, or from the stock form to the mutual form, except in accordance with the regulations of the Director.").

federal-to-state conversions, which are governed by
§ 1464(i)(3).[8]  The Association and France contend, however, that
the term "this subsection" refers to § 1464(i) as a whole, not
just to § 1464(i)(2), and that the federal-to-state conversions
governed by § 1464(i)(3) therefore fall within the scope of
§ 1464(i)(2)(B)'s review provisions.  Second, Reschini claims
that even if § 1464(i)(2)(B)'s review provisions do apply to
federal-to-state conversions, challenges in district court to the
accuracy of proxy materials are not barred because such
challenges do not seek review of "a final action of the Director
[of the OTS] which approves or disapproves a plan of conversion."
12 U.S.C. § 1464(i)(2)(B).  We examine the second of these two
claims first.

        The question whether a suit challenging the accuracy of
proxy materials submitted in respect of a savings association
conversion constitutes a challenge to OTS action was considered
by the Seventh Circuit in <u>Ordower v. Office of Thrift
Supervision</u>, 999 F.2d 1183 (7th Cir. 1993).  <u>Ordower</u> concerned a
federal savings association which gained approval both from the
OTS and from its depositor-members to change from mutual status
to stock status.  Following the conversion, two depositors
commenced two contemporaneous actions.  One was a suit in a
federal district court in Illinois which alleged that the
association had utilized misleading proxy statements in seeking

---

[8].  <u>See</u> discussion <u>supra</u> for text of § 1464(i)(3).

association members' approval of the conversion; the district court dismissed the suit for lack of subject-matter jurisdiction. The other was a petition for review filed in the Seventh Circuit challenging, on numerous grounds, the OTS Director's approval of the conversion. The Seventh Circuit consolidated the appeal from the district court and the petition for review, disposing of both in one opinion. The court found no fault in the order of the OTS Director; but the court held that the district court had jurisdiction to entertain the challenge to the proxy materials, and accordingly remanded that lawsuit for further proceedings.

In examining whether the district court had subject-matter jurisdiction over the depositors' suit alleging the fraudulent use of proxy materials, the Ordower court made a distinction between challenges to the accuracy of proxy materials and challenges to the substance of a conversion plan. With respect to challenges to the substance of a conversion plan, the court confirmed that § 1464(i)(2)(B) places exclusive jurisdiction in courts of appeals. "When Congress places review of an administrative decision in the court of appeals, district judges may not enjoin or penalize action that the agency has approved or that is the natural outcome of the agency's decision." Ordower, 999 F.2d at 1188 (citing FCC v. ITT World Communications, Inc., 466 U.S. 463 (1984) and Whitney Nat'l Bank v. Bank of New Orleans & Trust Co., 379 U.S. 411 (1965)). In contrast, because the OTS does not make a finding with respect to

the accuracy of proxy materials, challenges to such materials could be entertained in the district court.[9]

[9]. In deriving this conclusion, the Ordower court relied upon the regulations governing mutual-to-stock conversions, codified at 12 C.F.R. § 563b, as well as upon analogy to the practice of the Securities and Exchange Commission:

> The OTS does not review the accuracy of materials by which management solicits the depositors' approval. . . . Similarly the SEC looks over corporate proxy materials without approving them. Defects in these materials may be challenged in a district court even though the court of appeals is the exclusive forum for review of the SEC's decisions. . . . That the OTS has found the substance of a transaction in compliance with federal law — which is all the OTS's approval establishes — does not relieve the bank's managers of the duty to tell the truth when asking the depositors to approve the transaction. . . . A district court accordingly may consider whether the materials describing the transaction and soliciting that approval were complete and accurate.

Ordower, 999 F.2d at 1188 (citations omitted).

Harr v. Prudential Savings and Loan Ass'n, 557 F.2d 751 (10th Cir. 1977), cert. denied, 434 U.S. 1033 (1978), supports the position taken in Ordower. There, the Tenth Circuit affirmed a district court's dismissal of a claim for materially misleading proxy statements on the basis of 12 U.S.C. §§ 1730a(k) and 1725(j)(4) (the appeals court review provisions which served as precursors to 12 U.S.C. §§ 1464(i)(2)(B) and 1467a(j)). The court "assumed that the private remedies available under SEC 14A as to fraud also exist under the counterpart Bank Regulations," Harr, 557 F.2d at 752-53; however, the Tenth Circuit found dismissal appropriate because the suit was "in reality . . . a challenge to the Bank Board's decision [to approve a mutual-to-stock savings association conversion] although cast in terms of Rule 10b-5," id. at 754. This analysis is consistent with the Ordower court's limitation on the kind of attacks the depositor-member in that case could make on the allegedly false proxy materials. See Ordower, 999 F.2d at 1188 ("Ordower may not wage

We find that in the context of the Association's proposed federal-to-state conversion, as in the context of the mutual-to-stock conversion considered by Ordower, a suit challenging the accuracy of proxy materials does not seek to "enjoin or penalize action that the agency has approved or that is the natural outcome of the agency's decision." Ordower, 999 F.2d at 1188. OTS approval of the Association's application was governed by the expedited treatment process set forth in 59 Fed. Reg. 44,625 (Aug. 30, 1994) (to be codified at 12 C.F.R. § 563.22(b)(1)(ii)) and 12 C.F.R. § 516.3(a).[10] According to the

(..continued)
a collateral attack on the valuation approved by the OTS by describing the repetition of that valuation in the proxy materials as a form of fraud or deceit.").

Similarly, in Craft v. Florida Federal Savings & Loan Ass'n, 786 F.2d 1546 (11th Cir. 1986), the Eleventh Circuit dismissed a challenge to proxy statements as comprising "bare bones allegations made to escape the exclusive review provisions of the Review Statutes." Craft, 786 F.2d at 1554. However, the court noted that it was "not called upon here to decide, nor . . . express any views concerning the jurisdiction vel non of the district court under the federal securities laws when securities fraud is properly alleged . . . ." Id.; cf. Rembold v. Pacific First Fed. Sav. Bank, 798 F.2d 1307, 1311 (9th Cir. 1986) (holding that "an order approving an application of a conversion plan does not relate in any way to the right of the purchaser of stock to seek damages against the savings institutions for any misrepresentations in the offering circular").

[10]. See Letter from Diana Garmus, Deputy Assistant Director, Corporate Activities, OTS, to Daniel Weitzel, counsel for appellees, of October 18, 1994 ("Pursuant to Section 563.22(b)(1)(ii)(1994) . . . associations meeting the criteria for expedited processing under the OTS applications processing regulations (12 C.F.R. § 516.3(a)) may consummate a Sasser Conversion after filing a notification with the OTS at least 30 days prior to the Sasser Conversion. We believe that the Association is subject to the above referenced regulations and

expedited treatment process, "a savings association . . . may engage in activities upon filing a notice with the OTS together with any necessary certifications. For these activities, a notice will be all that is required and an association may engage in the activity unless the OTS objects within 30 days." 12 C.F.R. § 516.3(a)(2) (1994). The regulations elaborating upon the necessary "notification" state that "[t]he notification may be in the form of either a letter describing the material features of the transaction or a copy of a filing made with another Federal or state regulatory agency seeking approval from that agency for the transaction . . . ." 59 Fed. Reg. 44,626 (Aug. 30, 1994) (to be codified at 12 C.F.R. § 563.22(h)(1)).

There is no indication that findings with respect to the accuracy of proxy materials are part of the expedited treatment process. Rather, as in the mutual-to-stock context considered in Ordower, the regulations which governed approval of the Association's federal-to-state conversion address the

(..continued)
meets the criteria for expedited processing and 30-day notification to the OTS.")
This case has been complicated by the fact that the OTS regulatory structure governing federal-to-state conversions was amended during the pendency of this appeal. Prior to the adoption of the regulations published in the Federal Register on August 30, 1994, 59 Fed. Reg. 44,615-27, federal-to-state conversions of mutual savings associations were governed by the criteria codified at 12 C.F.R. § 571.5. See Letter from V. Gerard Comizio, Deputy Chief Counsel, Corporate and Securities Division, OTS, to Thomas Leahey, counsel for appellees, of May 26, 1994. Because the OTS letter communicating approval of the Association's proposed conversion applied the recently adopted regulations, we analyze this case according to those regulations.

substance of the conversion plan, but not the process by which that plan is approved by the depositor-members.  Accordingly, we conclude that HOLA's provision for court of appeals review of any final OTS action that "approves or disapproves a plan of conversion," 12 U.S.C. § 1464(i)(2)(B), does not, of its own force, bar district court jurisdiction over allegations of materially false or misleading proxy materials.[11]

Because we find that § 1464(i)(2)(B)'s court of appeals review provisions, assuming they govern federal-to-state

---

[11]. The record suggests that OTS consideration of the Association's proposed conversion included some review of the proxy materials.  On September 13, 1994, the OTS extended the applicable time period for OTS consideration of the conversion plan because of "significant issues of law and policy regarding whether the solicitation for proxies made by or on behalf of the association's board of directors complied with OTS proxy rules." Letter from Diana Garmus, Deputy Assistant Director, Corporate Activities, OTS, to Daniel Weitzel, counsel for appellees, of September 13, 1994.

The October 18, 1994 letter approving the conversion, however, indicates no findings with respect to the proxy materials.  See Letter from Diana Garmus, Deputy Assistant Director, Corporate Activities, OTS, to Daniel Weitzel, counsel for appellees, of October 18, 1994.  Moreover, mere examination of proxy materials by the OTS does not imply OTS findings with respect to the accuracy of the statements contained within.  Cf. 12 C.F.R. § 563b.5(g)(2) (applying to mutual-to-stock conversions) ("The fact that a proxy statement, form of proxy or other soliciting material has been filed with or examined by the Office and authorized for use shall not be deemed a finding by the Office that such material is accurate or complete or not false or misleading . . . .").  In the absence of regulatory provisions requiring OTS approval of proxy materials as well as any explicit findings by the OTS regarding the Association's proxy materials, we find the limited review which may have occurred inadequate to constitute OTS approval of the accuracy of the Association's proxy materials.

conversions, do not bar subject-matter jurisdiction in the district court over Reschini's claims, we do not reach Reschini's alternative contention — that is, that conversions governed by § 1464(i)(3) fall outside the scope of § 1464(i)(2)(B)'s review provisions.[12]

In short, if count I of Reschini's complaint — alleging that the Association and France distributed a proxy statement that was both false and incomplete — states a cognizable federal claim, the district court had subject-matter jurisdiction to entertain that claim. To the question whether count I states a cognizable federal claim we now turn.

**IV**

Arguing in the alternative, the Association and France contended in the district court that, even if the district court had jurisdiction to entertain Reschini's suit, the suit should nevertheless be dismissed because no implied private cause of action exists under 12 C.F.R. § 569.4, the OTS regulation invoked by Reschini in count I of his complaint as the source of his asserted federal claim. Because the district court found that it lacked subject-matter jurisdiction over Reschini's suit, the district court had no occasion to consider this alternative contention. As appellees, the Association and France have

_____

[12]. See supra text accompanying notes 7-8.

renewed this contention here.  Having determined that the district court, as a matter of subject-matter jurisdiction, is not precluded from entertaining Reschini's suit, we could remand to the district court the question whether HOLA contemplates such a suit.  But remand would, in all likelihood, result in a subsequent appeal again presenting the same question.  Because the question is one of law, considerations of judicial economy lead us to address the issue now.

Reschini bases his claim on 12 C.F.R. § 569.4 (hereafter "Section 569.4" or "§ 569.4"), which provides as follows:

> No solicitation of a proxy shall be made by means of any statement, form of proxy, notice of meeting, or other communication, written or oral, which . . .
>
> (c)(1)  Contains any statement that is false or misleading with respect to any material fact, or
> (2) Omits to state any material fact:
> (i) Necessary in order to make the statements therein not false or misleading or
> (ii) Necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter that has subsequently become false or misleading.

Section 569.4 was one of a number of regulations issued by the OTS in 1989, the year in which Congress, through the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA), abolished the Federal Home Loan Bank Board (FHLBB) and created

the OTS, both to take the place of the FHLBB and to carry on other regulatory functions.[13]  Section 569.4 had originally been promulgated by the FHLBB in 1971 pursuant to the FHLBB's general regulatory authority under the National Housing Act and had applied to savings institutions insured by the Federal Savings and Loan Insurance Corporation (FSLIC).[14]  In 1989, the OTS repromulgated § 569.4 pursuant to its general regulatory authority under HOLA; as repromulgated, § 569.4 applies to all savings associations.[15]

---

[13].  FIRREA reorganized the administrative structure applicable to savings associations by (1) dissolving the FHLBB; (2) creating the Office of Thrift Supervision, under the administration of the Department of Treasury, to serve as the successor to the FHLBB's former regulatory and chartering functions; and (3) transferring the insurance function of the Federal Savings and Loan Insurance Corporation to the Federal Deposit Insurance Corporation.  See H.R. Rep. No. 54(I), 101st Cong., 1st Sess. 293 (1989), reprinted in 1989 U.S.C.C.A.N. 86, 106.

[14].  The regulations were promulgated pursuant to the FHLBB's authority to regulate the FSLIC under sections 402, 403, and 407 of the National Housing Act, formerly codified at 12 U.S.C. §§ 1725, 1726, and 1730.  See 36 Fed. Reg. 19,973 (October 14, 1971) (citing 12 U.S.C. §§ 1725, 1726, and 1730 as statutory authority for the regulations).  Section 402 vested direction of the FSLIC in the FHLBB.  Section 403 authorized the FSLIC to insure the accounts of federal savings and loan associations. Section 407, among other things, authorized the FSLIC to terminate the insured status of any institution engaged "in an unsafe or unsound practice" or which found itself "in an unsafe or unsound condition to continue operations as an insured institution." § 407(b)(1).

[15].  The OTS repromulgated the regulations pursuant to its general regulatory authority under HOLA, codified at 12 U.S.C. §§ 1462, 1462a, and 1463.  See 12 C.F.R. § 569 (1994) (citing 12 U.S.C. §§ 1462, 1462a, and 1463 as statutory authority). Section 1462 defines terms.  Section 1462a establishes the OTS and the position of Director of the OTS.  Section 1463 confers on

The language of § 569.4 closely tracks that of SEC Rule 14a-9, 17 C.F.R. § 240.14a-9,[16] issued pursuant to section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a).[17]

(..continued)
the Director general authority to regulate savings associations and to prescribe accounting and disclosure standards for savings associations.

[16]. 17 C.F.R. § 240.14a-9 provides in relevant part:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting, or other communication written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

[17]. Section 14(a) of the 1934 Act, 15 U.S.C. § 78n(a), provides that

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

Rule 14a-9, taken together with its statutory parent, was found by the Court in J.I. Case Co. v. Borak, 377 U.S. 426 (1964), to support a private cause of action for materially misleading proxy statements.

## A

Borak was decided in 1964. It is still good law as a construction of the 1934 Act and Rule 14a-9. However, it is not clear that Borak, if it arose for the first time today, would be decided the same way. See Touche Ross & Co. v. Redington, 442 U.S. 560, 578 (1979) ("[S]ince Borak we have adhered to a stricter standard for the implication of private causes of action . . . ."). Starting in 1974, in Cort v. Ash, 422 U.S. 66 (1975), the Court has in a series of decisions developed the governing law on the implication, within the interstices of federal statutes and regulations, of private causes of action. Cort v. Ash directed courts to consider four factors — whether (1) "the plaintiff [is] 'one of the class for whose especial benefit the statute was enacted'"; (2) "there [is] any indication of legislative intent . . . to create such a remedy or to deny one"; (3) "it [is] consistent with the underlying purposes of the legislative scheme to imply such a remedy"; and (4) "the cause of action [is] one traditionally relegated to state law." Cort, 422 U.S. at 78 (citations omitted). However, as the Court observed

in Touche Ross, "the [Cort] Court did not decide that each of these factors is entitled to equal weight. The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." Touche Ross, 442 U.S. at 575. See also Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1102 (1991) ("The rule that has emerged in the years since Borak and Mills came down is that recognition of any private right of action for violating a federal statute must ultimately rest on congressional intent to provide a private remedy.") (citing Touche Ross, 442 U.S. at 560).

In light of developments since Borak, the question whether a private cause of action for depositor-members of mutual savings associations is implied under § 569.4's proxy provisions must begin with an examination of congressional intent.

Reschini has not identified any provision of HOLA or the National Housing Act that indicates congressional intent "to create, either expressly or by implication," a private cause of action. Our own examination has been no more fruitful. In particular, we find nothing in the provisions constituting the statutory footing for § 569.4 that is supportive of a private cause of action.[18]

Reschini contends, however, that § 569.4 is a regulatory embodiment of a "specific congressional intent," Brief of Roger R. Reschini, Appellant, at 8 n.7, located not in HOLA or

_____

[18]. See supra notes 14-15.

the National Housing Act, but in 1974 amendments to the Securities Exchange Act of 1934. Specifically, Reschini asserts that language added to § 12(i) in 1974 requires the implication of a private cause of action under § 569.4's proxy provisions.

Section 12(i) — a 1964 addition to the 1934 Act — authorizes certain non-SEC agencies to administer the 1934 Act's provisions with respect to securities issued by institutions over which these agencies have regulatory authority.[19] As originally adopted, § 12(i) did not grant any regulatory authority to the FHLBB. Congress remedied this omission in 1974, however, providing regulatory authority to the FHLBB over securities issued by institutions whose accounts were insured by the FSLIC. Pub. L. No. 93-495, § 105(b), 88 Stat. 1500, 1503-04 (1974), codified at 15 U.S.C. § 78l(i). Section § 12(i) was again amended in 1989 via FIRREA; in the amended version, the OTS was substituted for the FHLBB and was given regulatory authority with respect to securities issued by institutions whose accounts are

---

[19]. As added in 1964, § 12(i) vested the SEC's "powers, functions, and duties" (1) with respect to national and District of Columbia banks, in the Comptroller of the Currency; (2) with respect to all other member banks of the Federal Reserve System, in the Board of Governors of the Federal Reserve System; and (3) with respect to all other insured banks, in the Federal Deposit Insurance Corporation. Pub. L. No. 88-467, § 3(e), 78 Stat. 565, 568-569 (1964), codified at 15 U.S.C. § 78l(i). The provision contemplated "extend[ing] disclosure protection to investors in [bank] securities and at the same time [providing] for full coordination with the safeguards provided by the Federal bank regulatory structure." S. Rep. No. 379, 88th Cong., 1st Sess. 31 (1963).

insured by the Federal Deposit Insurance Corporation.  See 15

U.S.C. § 78l (Historical and Statutory Notes, 1989 Amendment).

The 1974 amendment to § 12(i), in addition to its grant

of regulatory authority to the FHLBB, added language directing

the non-SEC agencies to issue regulations "substantially similar"

to those promulgated by the SEC pursuant to numerous sections of

the 1934 Act, including § 14(a):

> In carrying out their responsibilities under
> this subsection, the agencies named . . .
> shall issue substantially similar regulations
> to regulations and rules issued by the [SEC]
> under sections 12, 13, 14(a), 14(c), 14(d),
> 14(f) and 16 [of the 1934 Act], unless they
> find that implementation of substantially
> similar regulations with respect to insured
> banks and insured institutions [is] not
> necessary or appropriate in the public
> interest or for protection of investors, and
> publish such findings, and the detailed
> reasons therefor, in the Federal Register.

15 U.S.C. § 78l(i).  For the reasons that follow, we disagree

with Reschini's contention that § 12(i)'s "substantially similar"

language provides the requisite congressional intent to create a

private cause of action under § 569.4 for depositor-members of

mutual savings associations.

First, while Reschini's argument for a private cause of

action under OTS proxy regulations may have merit insofar as it

applies to proxy regulations issued pursuant to § 12(i)'s

mandate,[20] § 569.4 is not such a regulation.  As described above,

---

[20].  Cf. 12 C.F.R. § 563d (citing § 12 of the 1934 Act as
statutory authority).  Those regulations provide in part:

§ 569.4 was originally adopted in 1971 pursuant to the general FHLBB's general regulatory authority under the National Housing Act — three years before § 12(i) was amended to give the FHLBB authority to administer the 1934 Act's securities provisions. When § 569.4 was promulgated anew by the OTS in 1989, the OTS cited its general regulatory authority under HOLA.  On neither occasion was § 12(i) of the 1934 Act mentioned as authority for the regulation.

Second, the 1934 Securities Exchange Act provisions are simply not relevant to the ownership interests held by Reschini. The 1934 Act establishes a statutory scheme covering certain types of securities.  Originally, the 1934 Act applied only to securities traded on national securities exchanges; in 1964, Congress passed the Securities Act Amendments which extended the 1934 Act's protections and requirements to include many over-the-counter securities as well.  See S. Rep. No. 379, 88th Cong., 1st

(..continued)

> In respect to any securities issued by savings associations, the powers, functions, and duties vested in the Securities and Exchange Commission (the "Commission") to administer and enforce sections 12, 13, 14(a), 14(c), 14(d), 14(f), and 16 of the Securities Exchange Act of 1934 (the "Act") are vested in the Office.  The rules, regulations and forms prescribed by the Commission pursuant to those sections or applicable in connection with obligations imposed by those sections, shall apply to securities issued by savings associations, except as otherwise provided in this part.

12 C.F.R. § 563d.1.

Sess. 1 (1963) (a "primary objective" of the 1964 amendments is to "improve investor protection by extending to the larger companies in the over-the-counter market the registration, reporting, proxy solicitation, and insider trading requirements now applicable to companies listed on an exchange").[21]

Reschini's ownership interest, however, is not among those types of securities covered by the 1934 Act's protections, even as expanded in 1964. When, in 1964, Congress extended the 1934 Act's protections to certain over-the-counter securities, it specifically excluded from coverage "any security, other than permanent stock, guaranty stock, permanent reserve stock, or any similar certificate evidencing nonwithdrawable capital, issued by a savings and loan association." 15 U.S.C. 78l(g)(2)(C). Given that § 12(i) directs regulatory agencies to issue "substantially similar" regulations to those of the SEC in the context of "carrying out their responsibilities under this subsection," it would be anomalous to find that this language evidences congressional intent to create a private cause of action with

---

[21]. Accordingly, the Securities Act Amendments (1) added registration requirements for most securities with certain minimum assets and number of stockholders, 15 U.S.C. § 78l(g); and (2) amended the disclosure requirements to encompass all registered securities. For example, § 14(a)'s language, which previously applied to proxies in respect of any nonexempt security "registered on any national securities exchange" was amended to apply to any nonexempt security "registered pursuant to section 12 of this title." See 15 U.S.C. § 78n (Historical Note, 1964 Amendment).

respect to ownership interests outside the 1934 Act's protections.[22]

Because § 569.4 was not promulgated pursuant to § 12(i) of the 1934 Act, and because the 1934 Act does not even apply to the ownership interests of depositor-members in mutual savings associations, we find no evidence in § 12(i) of congressional intent to create a private cause of action for depositor-members of mutual savings associations under § 569.4.

**B**

In the preceding section of this opinion we have addressed, as the touchstone issue, the question of congressional intent to establish a private cause of action. But there is a further issue to be addressed. Bearing in mind that — as in Borak — certain private causes of action were judicially implied in the pre-Cort era when congressional intent was "not . . . the considered focus," Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1102 (1991), the question arises whether the non-implication of a private cause of action would be "demonstrably

_____

[22]. In King v. Edwards, 559 F. Supp. 75 (N.D. Ga. 1982), the court concluded that the 1974 amendment to § 12(i) provided evidence of congressional intent to create a private cause of action under FHLBB proxy rules. King, 559 F. Supp. at 83. For the reasons set forth in the text, we disagree with this reasoning insofar as it applies to depositor-members of federal mutual savings associations seeking to convert to state-chartered form.

inequitable to a class of would-be plaintiffs with claims

comparable to those previously recognized," id. at 1104.

> [W]here a legal structure of private statutory rights has developed without clear indications of congressional intent, the contours of that structure need not be frozen absolutely when the result would be demonstrably inequitable to a class of would-be plaintiffs with claims comparable to those previously recognized. Faced in that case with such a claim for equality in rounding out the scope of any implied private statutory right of action, we [look] to policy reasons for deciding where the outer limits of the right should lie.

Id. at 1104-05 (discussing Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 (1975)).

The "previously recognized" cause of action to which Reschini's claim might be compared is that implied by the Borak Court under SEC Rule 14a-9. Reschini's claim, like the claim at issue in Borak, involves an allegation of materially misleading proxy statements. Unlike the proxy statements in Borak, however, the proxy statements of which Reschini complains are not subject to the proxy disclosure provisions of the 1934 Act. As discussed above, securities issued by savings associations — with the exception of certain types of securities not relevant here — are expressly excluded from coverage of the Act's requirements and protections. 15 U.S.C. § 78l(g)(2)(C).

We find this difference to be significant. When Congress exempted accounts in savings and loan associations from

the 1934 Act's requirements, it did so on the basis of an important distinction between such accounts and other types of securities: the lack of a trading interest. See S. Rep. 379, 88th Cong., 1st Sess. at 61 (1963) (explaining the exemption for "share accounts in savings and loan associations" on the basis that "[t]here is normally no trading interest in . . . [this category] of securities"). The Ordower court also discussed the insubstantial nature of the ownership interests held by depositor-members of a mutual savings association.[23] These characteristics lead us to conclude that Reschini's ownership interest in his savings account is not sufficiently comparable to the interests of persons with claims under SEC Rule 14a-9 such that the failure to recognize a private cause of action would be "demonstrably inequitable."[24]

---

[23]. See supra text following note 1.

[24]. Reschini's reliance on Ordower with respect to implication of a private cause of action is inapposite. There, after ruling on the jurisdictional question discussed in Part III, supra, the court held that a challenge to the accuracy of proxy materials used in a mutual-to-stock conversion could be brought in a district court, thus suggesting the existence of a private cause of action. Ordower, 999 F.2d at 1188.

Ordower, however, concerned different proxy regulations, those at 12 C.F.R. § 563b, in the context of a mutual-to-stock, rather than a federal-to-state, conversion. Mutual-to-stock conversions, which result in securities to which the 1934 Act's registration and disclosure requirements apply, are regulated in part by the 1934 Act's requirements. See 12 C.F.R. § 563b (citing 1934 Act provisions as statutory authority for regulations governing mutual-to-stock conversions). Federal-to-state conversions of mutual savings associations, in contrast, have no connection with the issuance of securities protected by the 1934 Act. Thus, Ordower is not authority for implying a

## C

Our analysis has revealed no evidence of congressional intent to create a private cause of action under § 569.4 for depositor-members of mutual savings associations. Moreover, we are not persuaded that non-implication of a private cause of action would create a situation "demonstrably inequitable" to such depositor-members. Thus, we conclude that count I of Reschini's complaint does not state a federal claim on which relief can be granted.

## V

Accordingly, albeit because of the absence of a cognizable federal cause of action rather than for lack of subject-matter jurisdiction, the judgment of the district court dismissing Reschini's complaint will be affirmed.

(..continued)
private cause of action under 12 C.F.R. § 569.4 in the context of federal-to-state conversions of mutual savings associations.