

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-9-2003

# Vieth v. Comm of PA

Precedential or Non-Precedential: Non-Precedential

Docket 02-1580

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Vieth v. Comm of PA" (2003). *2003 Decisions.* Paper 561.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/561

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-1580

RICHARD VIETH; NORMA JEAN VIETH; SUSAN FUREY

v.

COMMONWEALTH OF PA; MARK S. SCHWEIKER, In his official capacity
as Governor of Pennsylvania; KIM PIZZINGRILLI, In her official
capacity as Secretary of the Commonwealth of Pennsylvania;
RICHARD FILLING, In his official capacity as Commissioner of
the Bureau of Commissions, Elections, and Legislation of the
Pennsylvania Department of State; ROBERT C. JUBELIRER, In
his official capacity as Lieutenant Governor of Pennsylvania
and President of the Pennsylvania Senate; MATTHEW J. RYAN,
In his official capacity as Speaker of the Pennsylvania
House of Representatives

REPUBLICAN CAUCUS OF THE PENNSYLVANIA
HOUSE OF REPRESENTATIVES (Intervenor in D.C.)

Republican Caucus of the Pennsylvania House
of Representatives,
                                        Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR MIDDLE THE DISTRICT OF PENNSYLVANIA
D.C. Civil No. 01-cv-02439
District Judge:  The Honorable Sylvia H. Rambo

Submitted Under Third Circuit LAR 34.1(a)
April 7, 2003

Before: BECKER[*], Chief Judge, BARRY and BRIGHT,[**] Circuit Judges

(Filed: May 9, 2003)

OPINION

BARRY, Circuit Judge

As a result of the 2000 census, Pennsylvania lost two congressional seats and was required to adopt a redistricting plan. This appeal arises out of a challenge to the General Assembly's first such plan, which was signed into law on January 7, 2002. Appellant, the House Republican Caucus of the Pennsylvania General Assembly ("Caucus"), was permitted to intervene in the underlying case for the limited purpose of supporting a motion to quash a subpoena *duces tecum* served on a third party. After the motion to quash was denied, the Caucus filed this appeal. We will dismiss the appeal as moot.

I.

Plaintiffs, three registered Democrats, sued defendants, the Commonwealth of Pennsylvania and various state officials, alleging that Act 1, the redistricting plan

---

[*]Judge Becker completed his term as Chief Judge on May 4, 2003.

[**] The Honorable Myron H. Bright, United States Circuit Judge for the Eighth Circuit, sitting by designation.

2

adopted in January of 2002, was unconstitutional. A district court of three judges (Nygaard, C.J.; Rambo and Yohn, D.J.'s) was convened pursuant to 28 U.S.C. § 2284 (a), which provides for such a panel "when an action is filed challenging the constitutionality of the apportionment of congressional districts." 28 U.S.C. § 2284 (a). An order issued setting an expedited discovery schedule and scheduling an evidentiary hearing for March 11, 2002.

On February 8, 2002, plaintiffs' counsel served a subpoena *duces tecum* on the Custodian of Records of Carnegie Mellon University ("CMU"), seeking the following documents:

> (1) the contract between (a) the Pennsylvania House Republican Caucus and/or John Perzel and/or any related entity and (b) Carnegie Mellon University, the Pittsburgh Supercomputing Center, or any related individual or person relating to a demographic analysis of census data; and (2) all communications, including request for maps or data, between Beverly Clayton and/or the Office of Sponsored Research (and its employees) and the Pennsylvania House Republican Caucus, any member of that Caucus, and/or any employee or representative of any member pertaining to that contract.

According to plaintiffs, "[t]he purpose of the subpoena was to obtain further evidence supporting the fact, as had been reported in the press and testified to at the Commonwealth Court hearing, that CMU had performed highly sophisticated census analysis that underlies the meanderings of the Congressional boundaries established by Act 1." Plaintiffs' Memorandum of Law in Opposition to Motion to Quash Subpoena or for Protective Order at 1-2.

3

On February 19, 2002, defendants Lieutenant Governor Robert C. Jubelirer and Speaker of the House of Representatives Matthew J. Ryan (the "Presiding Officers") filed a motion to quash the subpoena or, in the alternative, for a protective order. On February 22, 2002, the Caucus was granted permission to intervene to support the Presiding Officers' motion to quash. That same day, the motion to quash was denied.

The Presiding Officers, along with the Caucus, filed a motion to stay the order denying the motion to quash pending appeal, and the Caucus filed a timely notice of appeal to this Court. On February 25, 2002, CMU produced most of the documents requested and the motion for a stay was subsequently withdrawn.

On March 11th and 12th of 2002, the three-judge panel held an evidentiary hearing and on April 8, 2002 determined that Act 1 violated the dictates of one person-one vote and enjoined its implementation. The panel granted the Pennsylvania General Assembly three weeks to submit a plan that would remedy the constitutional deficiencies it had found.

On April 17, 2002, the General Assembly enacted a revised congressional redistricting plan, Act 34, which the governor signed into law the next day. Act 34 repealed Act 1 and replaced it with Act 34's boundaries. Defendants then petitioned the panel to stay its decision regarding Act 1 and to allow the 2002 congressional elections to proceed under Act 1's boundaries, which the panel agreed to do. As a result, Act 34 was not in effect for the congressional elections that took place in November of 2002. Act 34

4

is scheduled to govern the next round of congressional elections in November of 2004, however.

Plaintiffs filed a motion challenging Act 34 and seeking to impose remedial districts or hold remedial hearings; defendants subsequently moved for summary judgment. On January 24, 2003, the three-judge panel upheld the new redistricting plan, finding that it satisfied the one person-one vote requirement, that a possible violation of the state constitution did not change the result, and that the plan did not involve illegal gerrymandering. Plaintiffs have appealed that decision to the Supreme Court of the United States.

**II.**

All that is before us on this appeal is the February 22, 2002 order denying the motion to quash. This appeal is properly before us, despite the fact that a three-judge panel was convened in this case. "Except as otherwise provided by law, any party may appeal to the Supreme Court from an order granting or denying, after notice and hearing, an interlocutory or permanent injunction in any civil action, suit or proceeding required by an Act of Congress to be heard and determined by a district court of three judges." 28 U.S.C. § 1253. The discovery order at issue in this appeal was not, of course, an order granting or denying injunctive relief and so appeal to the Supreme Court would have been

5

inappropriate.[1] As for an appeal to our Court, the Caucus was not required to wait until the case proceeded to judgment before appealing the denial of its motion to quash because the order denying the motion was "a final order as to [it]." In re Grand Jury, 111 F.3d 1066, 1076 (3d Cir. 1997).

We turn, then, to the question of mootness, given that the subpoenaed documents have been produced. Plaintiffs, we note, have declined to participate in this appeal. In a letter to us, dated December 16, 2002, they explained that because the three-judge panel had already issued its decision without the subpoenaed documents having been offered into evidence, the outcome of this appeal would have no impact on them. The Caucus, on the other hand, explained in its letter to us of March 12, 2003 that it wishes to continue to pursue this appeal, despite the fact that the underlying case is "over," "because the issue of legislative privilege in connection with non-parties and discovery was one we were encountering in other cases." The Caucus also noted that the case was not actually over, because of the pending Supreme Court appeal.

In the above-mentioned letter and in its brief on appeal, the Caucus makes two arguments as to why this appeal is not moot, and one for why, if it is, an exception to the mootness doctrine should apply. First, the Caucus argues that the case is not moot because conceivably the Supreme Court could reverse the January 24, 2003 order of the

---

[1] The Caucus nonetheless appealed the order denying the motion to quash to the Supreme Court. The Court dismissed the appeal for want of jurisdiction.

three-judge panel and remand for further proceedings. This argument fails because the dispute over the motion to quash centered on the release of documents to plaintiffs, not their evidentiary use. Should the case be remanded, and should a dispute then arise over the evidentiary use of the documents, that dispute will be for the three-judge panel to resolve in the first instance. See In re Federal Grand Jury Proceedings, 89-10 (MIA), 938 F.2d 1578, 1580 (11th Cir. 1991)(holding that attorney-client privilege challenge to attorney's testimony before grand jury was moot as attorney had already testified, and that appeals court could not issue an advisory opinion regarding the admissibility of the testimony at trial).

The Caucus argues, next, that the case is not moot because while it might not be possible for us "to return the parties to the *status quo ante*," it is still possible to "fashion *some* form of meaningful relief." Church of Scientology of Cal. v. United States, 506 U.S. 9, 12-13 (1992). The availability of even a less-than-fully-satisfactory remedy is sufficient to prevent a case from being moot. Id. at 13. "Such relief need not have been requested in the pleadings. Rather, 'it is the court's obligation to grant the relief to which the prevailing party is entitled whether it has been specifically demanded or not.'" Reschini v. First Fed. Sav. and Loan Ass'n of Indiana, 46 F.3d 246, 249 (3d Cir. 1995)(quoting Kirby v. United States Dep't of Hous. & Urban Dev., 745 F.2d 204, 207 (3d Cir.1984)).

The Caucus suggests that meaningful relief is still available because we could

order plaintiffs to destroy the documents they received from CMU. This is the remedy suggested in Church of Scientology. But that case is quite different from this case. L. Ron Hubbard, founder of the Church of Scientology, was being investigated by the Internal Revenue Service ("IRS"). In connection with the investigation, the IRS served a summons on a state-court clerk seeking the production of, among other things, two tapes of conversations between Church officials and their attorneys. The IRS then commenced a proceeding to enforce the summons, the lower court ordered compliance, and the Church appealed. While the appeal was pending, copies of the tapes were turned over to the IRS. As a result, the Court of Appeals dismissed the appeal as moot. The Supreme Court vacated the dismissal:

> Taxpayers have an obvious possessory interest in their records. When the Government has obtained such materials as a result of an unlawful summons, that interest is violated and a court can effectuate relief by ordering the Government to return the records. Moreover, even if the Government retains only copies of the disputed materials, a taxpayer still suffers injury by the Government's continued possession of those materials, namely, the affront to the taxpayer's privacy. A person's interest in maintaining the privacy of his "papers and effects" is of sufficient importance to merit constitutional protection . . . .

Church of Scientology, 506 U.S. at 12-13.

The Caucus does not claim to have a possessory interest in the documents retained by CMU and the existence and significance of any privacy interest is at best unclear. "'[U]nlike privileges such as attorney-client, physician-patient, or priest-penitent, the purpose of which is to prevent disclosures which would tend to inhibit the development of

8

socially desirable confidential relationships, the Speech or Debate privilege is at its core a *use privilege.*'" Gov't of the Virgin Islands v. Lee, 775 F.2d 514, 523 (3d Cir. 1985)(quoting In re Grand Jury (Intervenor A), 587 F.2d 589, 596 (3d Cir. 1978)). See also Powell v. Ridge, 247 F.3d 520, 524 (3d Cir. 2001)(noting that legislative immunity is not "bottomed on confidentiality").

Moreover, none or almost none of the purposes of the legislative privilege would be served by ordering destruction of the documents. The primary purpose of the privilege is to "protect the integrity of the legislative process by insuring the independence of individual legislators." United States v. Brewster, 408 U.S. 501, 507 (1972). The privilege enables legislators to function independently, "without regard to the distractions of private civil litigation or the perils of criminal prosecution." Brown & Williamson Tobacco Corp. v. Williams, 62 F.3d 408, 415 (D.C. Cir. 1995). It prevents "'intimidation of legislators by the Executive and accountability before a possibly hostile judiciary'" and shields the legislature from delay and disruption. Larsen v. Senate of the Commonwealth of Pa., 152 F.3d 240, 250 (3d Cir. 1998)(quoting Eastland v. United States Servicemen's Fund, 421 U.S. 491, 502 (1975). Here, any threat to the integrity of the legislative process caused by CMU's compliance with the subpoena has already occurred. Destroying the documents would not remedy past delay, distraction, disruption

9

or intimidation or in any other way effectuate meaningful relief.[2]

The Caucus presses on, arguing that even if this case is technically moot, we should nonetheless decide it on the merits because it fits within the "capable of repetition, yet evading review" exception to the mootness doctrine. That exception, however, is limited to cases which have two elements: "(1) the challenged action was in its duration too short to be fully litigated to its cessation or expiration and (2) there is a reasonable likelihood that the same complaining party would be subjected to the same action again." Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001)(citations omitted).

It is not enough to merely conclude, as the Caucus does, that "the issue of legislative immunity in the discovery context" is capable of repetition. As for this case, there is no more than a theoretical possibility that CMU will again be subpoenaed and ordered to produce documents relating to the work it did on the 2000 census. In any event, if it were to be subpoenaed, there is no reason to believe that review will be evaded.

In sum, we lack jurisdiction over this appeal because it is moot. The appeal will be dismissed.


TO THE CLERK OF THE COURT:

---

[2] We note that the Caucus asserts but does not explain why destruction of the documents would serve as a partial remedy for the harm it has allegedly suffered. If it had offered more in the way of explanation, the calculus might be different.

Kindly file the foregoing Opinion.




/s/ Maryanne Trump Barry
Circuit Judge